## The Cleveland and Pittsburgh Railroad Company v. Joseph L. Ball.

The *opinion* of a witness as to the *amount of damages* which a land owner will sustain by the appropriation of a portion of his land for the purpose of constructing a railroad over it, is not admissible as evidence. *Atlantic and Great Western Railroad Company* v. *Campbell*, 4 Ohio St. Rep. 583, followed and approved.

But a witness may be allowed to give his opinion as to the value of the land affected.

Where in a proceeding by a railroad company to appropriate land for its use, an inquiry of damages is made, and it appears from the direct examination of a witness, that on the tract of land over which the railroad is to be constructed, there are coal mines, and that the building of the road between them and a navigable river would tend to prevent the coal from being taken from the mines to the river, the witness, on cross examination, may be asked whether the facilities of transportation of coal to market would be diminished by reason of the construction of the road.

Where compensation is claimed for the location and construction of a railroad between coal mines and a navigable river on the land-owner's premises, whereby the conveniences of the river transportation for the coal to market were injured, or cut off, it is competent for the railroad company to show that the river transportation, in connection with the coal banks, had ceased to be valuable, or become of less value by means of the facilities for

coal transportation afforded by the railroad, for the purpose of reducing the damages.

Where a piece or strip of land is, by appropriation made by a railroad company, severed from its connection with the other land of the owner, in estimating the compensation to be made to the owner, not only is the abstract value of the strip or piece taken to be considered, but also its relative value, and the effect arising from its severance from the residue of the owner's land, as well as the uses to which it is to be appropriated.

In case of a railroad appropriation for a right of way through a tract of land, causing incidental and local injury to the residue of the tract, although general resulting benefits from the railroad to the value of such residue of the land cannot be taken into account, in estimating the amount of compensation to be paid the owner; yet where a local incidental benefit to the residue of the land is blended or connected, either in locality or subject matter, with a local incidental injury to such residue of the land, the benefit may be considered in fixing the compensation to be paid the owner. not by way of deduction from the compensation, but of showing the extent of the injury done the value of the residue of the land.

But in assessing the compensation for a local incidental injury to the residue of the owner's tract of land, arising from the appropriation of the right of way, and construction of a railroad, whether a local incidental benefit arising from the railroad structure to the residue of the tract, but not connected either in locality or subject-matter with the injury, can be taken into the account in estimating the compensation for the damages,—*quere.*

PETITION in error to reverse the judgment of the Court of Common Pleas in affirmance of the judgment of the Probate Court of Jefferson county.

The original proceeding was instituted by the plaintiff, in the probate court of Jefferson county, under the statute of April 30, 1852, relating thereto, for the appropriation of certain land belonging to the defendant, situate in said county, for the purpose of constructing thereon its railroad.

On the 20th of June, 1853, a jury was empanneled to assess the damages, and sent out to view the premises sought to be appropriated, and on their return into court, the parties called witnesses and examined them before the jury. On this examination, exceptions were taken to the ruling of the probate judge as to the admissibility of evidence ; also to his charge to the jury; and to his refusal to charge as requested by the plaintiff in error.

A writ of certiorari was afterward prosecuted in the court of common pleas by the railroad company, to reverse the confirmation of the verdict of the jury by the probate court. The order of the probate court was affirmed by the common pleas, and thereupon the company filed a petition in error in the district court, and the cause was reserved for decision in this court.

During the trial of the cause in the probate court, the land owner asked a witness this question :

" What, in your opinion, is the damage which Joseph L. Ball will sustain by reason of this appropriation ?"

The question was objected to, the objection overruled, and the witness answered, " that in his opinion the said Joseph L. Ball sustained damages by reason of the appropriation, to the amount of $5,000 or $6,000." The answer was objected to, and a motion made that it be withdrawn from the jury ; which motion was also overruled.

Similar questions calling for the opinion of witnesses as to the gross amount of damage, were put to several other witnesses, and were answered ; all objections to the questions and answers being overruled.

The land owner next offered the following testimony, which was objected to by the railroad company, the objection overruled, and the testimony permitted to be considered by the jury :

" That in an adjoining field of the said Ball, and outside of the limits of the act of appropriation, there was a spring of water. That in his opinion the most convenient mode of raising said water, would be to bring the same from the spring to the house of Ball in pipes; and that a pipe from the spring to the house of the said Ball, would cross the strip of land appropriated, at a point where the cut was eleven feet deep ; that in his opinion, the use of the spring would be lost to the said Ball, and that in witness's opinion he was damaged $1,000 by the loss of the spring; that he was damaged $1,000 by the cutting of the farm; that he was damaged $500 by the cutting off of a road which he had to the hill ; that he was damaged $500 by the annoyance of the railroad ; that there was a site for a barn over the limits of the appropriation, but without them, upon which no

barn was now situated, and that he was damaged $300 by the loss of that site, and that the land taken was worth $310."

The railroad company moved the court to take from the jury each one of those estimates, except that of the value of the land. This motion was overruled, and the whole testimony permitted to go to the jury as it had been testified to by the witness.

Evidence was further offered by the land owner, that there were valuable coal mines on the tract through which the railroad passes; that the road was located between the mines and the river; and that in the opinion of the witnesses, the railroad would prevent the coal from being transported across it to the river.

The counsel of the railroad company, in the cross examination of these witnesses, inquired: " Will the facilities of transportation of coal to a market, be diminished by reason of the construction of this road ?" This question was objected to by the land owner, and the witnesses were not permitted to answer it.

After the testimony was closed, the court was requested by the counsel for the plaintiff in error to charge the jury, amongst other things, as follows :·

1st. That in estimating damages to property *outside of the limits of the land appropriated*, the damages only are to be considered, which *necessarily* result from the appropriation of the land, and that in estimating such damages they are not to take into account any supposed future damages from the working or construction of said road.

2d. That in estimating damages, they are not to take into account any supposed future annoyance or damage to persons or cattle, which may be caused by the working of the railroad.

3d. That it is proper for the jury to consider the benefits, by reason of the appropriation, to the residue of the tract through which the appropriation is made, *for the purpose of determining whether such residue is injured by the appropriation.*

4th. That if the jury are of opinion that the whole of the residue of the tract through which the appropriation is made, *is not diminished in value* by the appropriation, that no damages are

to be assessed for any injury which it may be claimed is done by the appropriation to such residue.

These instructions the court refused to give to the jury, but did charge them as follows :

As to the *first* and *second* of the propositions asked to be charged—

" That in estimating the defendant's damages, they were to take into consideration such injuries or damages to his property, as might reasonably be looked for and expected as the necessary or natural consequence of the appropriation made by the railroad company, and the construction and use of the work proposed by it ; or such as are reasonably to be expected as proximate consequences from the same—that is, *near and immediate*, and not such as may be *merely imaginary*, or may by *possibility* result therefrom."

As to the *third* point requested, the court charged the jury—

" That by the constitution of the State, and their oaths, they were required to assess the defendant's damages or the amount of his compensation, irrespective of any benefit proposed by the plaintiff as a railroad company, and that they were to exclude all real or imaginary benefits from their consideration."

As to the *fourth* point requested, the court charged the jury—

" That the constitution of the State provided that the compensation shall be assessed by the jury without deduction of benefits to any property of the owner. That to charge the jury as requested, would be asking them to disregard this provision of the constitution as well as art. 13, sec. 5, which provides that the compensation made to the owner of the property, shall be irrespective of any benefits from any improvement proposed by said corporation."

Errors are assigned upon the several rulings of the court excepted to, and upon the refusal of the court to charge the jury as requested, and also upon the charge as given.

*R. S. Moody* and *Eli T. Tappan,* for plaintiff in error.

*Stanton & McCook,* for defendant in error.

BARTLEY, C. J.

The first inquiry presented in this case, is, whether the court below erred in admitting the opinions of witnesses as evidence to show *the damages* which the appropriation would occasion to the defendant. This is fully answered by the determination of this court at the last term, in the case of *The Atlantic and Great Western Railroad Company* v. *Campbell*, 4 Ohio St. Rep. 583. The general rule that the testimony of witnessees is confined to a statement of facts coming from observation, knowledge and recollection, as distinguished from *the mere opinion or inference* of a witness, is a safe rule, although subject to numerous exceptions. Opinions are often formed upon slight or inaccurate information, and sometimes the mere dictate of feeling, rather than the exercise of judgment, and therefore to be received with great caution even when competent as evidence.

There are some facts of such a nature as to be incapable of the ordinary means of proof by direct evidence, and consequently resort is had to the best means of proof which the nature of the subject affords. On questions of science, skill, trade, and others of a like nature, experts are allowed to give their opinions as evidence. On questions of pedigree or relationship, character, boundary, and the like; also on inquiries touching the extent of a man's property, his solvency, health, sanity, affection, antipathy, and others of a similar nature, the knowledge of witnesses is chiefly a matter of opinion, and it is often impossible to enumerate each particular fact from which the knowledge of a witness is derived. And of this nature are inquiries touching the value and quality of property. And in the case of *The Atlantic and Great Western Railroad Company* v. *Campbell*, above cited, while the opinions of witnesses as to the amount of damages sustained, are excluded as incompetent evidence, the court did not exclude the opinions of witnesses as to the value of the land, before and after the location of the railroad. It is proper for a witness to describe the particulars of the injury, the manner in which the property is affected, and give his opinion as to the value of the land. And it is for the jury to find from all the facts, from the value of the land, and the extent and manner

in which injured, and other circumstances, what amount of damage has been sustained by the land owner. And to allow witnesses to give their opinions as to the amount of the damages suffered, would permit witnesses to swear to the conclusion which it is the peculiar province of the jury to deduce from the evidence. Upon this ground, therefore, there was error in the proceedings of the court below.

2d. It appears, that in the further progress of the case before the probate court, evidence was given by the land owner that there were valuable coal mines on his land through which the railroad passes; that the road was located between the coal banks and the river; and that in the opinion of the witnesses, the railroad would prevent the coal from being carried across the road to the river. On cross examination, the counsel for the company inquired of the witnesses: "Will the facilities for transportation of coal to a market, be diminished by reason of the construction of this railroad?" This inquiry was objected to by the land owner, and the objection sustained, to which ruling an exception was taken.

In this, the probate court manifestly erred. The inquiry was legitimate and proper as coming within the scope of cross-examination; and it was especially important to show the value, if there would be any value, in the river transportation in connection with the coal banks. This would not be deducting benefits, but simply showing what value there would be in the river transportation to the owner of the coal banks, after the construction of the road; for that value, so far as affected, would be one of the direct incidental consequences occasioned by the appropriation. If by means of the railroad facilities, the river transportation would be superseded by a cheaper and better mode of transportation, and thus be rendered of but little or no value to the owner, he ought not to be paid a compensation on account of an incidental disadvantage or loss of value which he did not suffer.

3d. The questions arising on the charge of the court to the jury, and the refusal of the court to charge as requested, are comprehended in the following inquiries:

1. In estimating the damages to property outside of the limits of the land appropriated, what compensation for the incidental injury to the value of the residue of the land, is to be taken into the account?

2. Can the damages to the residue of the land through which the appropriation is made, be reduced by deducting therefrom, or setting off against them, the resulting benefits of the railroad to such residue of the land?

The provisions of the constitution of this State on this subject, are somewhat different from the provisions in the constitutions of some of the other states. "*Full compensation*" is required to be made to the owner *in money* for the appropriation of his property, as a condition precedent. To be a full compensation, it must be a remuneration or recompense for that detriment or loss to the owner in the value of his property arising from *the taking of his property in connection with the use for which it is taken.* Where a piece or strip of land is taken and severed by the appropriation from its connection with other land of the owner, some elements of compensation necessarily enter into the computation besides the abstract value of the number of feet or acres of ground actually taken. These elements of compensation may be comprehended in the following: first, the abstract value of the quantity of ground taken; second, the value arising from the relative situation of the land, taken in its connection with the residue of the owner's land from which it is severed; and third, the effect upon the value of the residue of the owner's land arising from the uses for which the appropriation is made. These grounds of compensation will give the land owner a recompense for the loss in the value of his property, caused by *the appropriation for the special purposes or use* for which it is authorized. Thus far, and thus far only, is the loss in the value of the residue of the land of the owner to be taken into account in making up the amount of the compensation to be paid.

It is said in the work of Redfield on Railways, page 152, "It is requisite that the tribunal appraising land damages, for lands condemned for railways, should take into consideration all such incidental loss, inconvenience and damage, as may reasonably be

expected to result from the construction and use of the road, *in a legal and proper manner*.   And as all tribunals having jurisdiction of any particular subject matter are presumed to take into consideration all the elements legally constituting their judgments, such incidental loss and damage will be barred by the appraisal, whether, in fact, included in the estimate or not."

It is true, that speculative prospective detriment or injury to the value of the residue of the land, either by means of the severance therefrom of the land taken, or by the use and workings of the railroad, is not to be taken into the estimate; but the compensation is to be confined to such loss and injuries in the value of the owner's property, as are appreciable at the time, as the necessary or natural consequences, fairly and reasonably expected to follow, from the appropriation made to the uses of the railroad, including in the incidental injury. to the value of the residue of the land, the deterioration in value from the necessary inconvenience and annoyance in the enjoyment of the same arising from the operation of the railroad.   This is in accordance with the rule estimating the compensation in England, which requires that " regard shall be had not only to the land taken, but also to damage by reason of severance from other lands, or otherwise injuriously affecting such lands."

The second inquiry arising on the instructions of the court to the jury, involves the inquiry whether, in estimating the compensation for the incidental loss or injury to the residue of the owner's land, the incidental prospective benefits to such residue of the land from the railroad, are to be taken into the account, in reduction of the amount of the loss or injury.

Mr. Redfield, in his work on Railways, page 135, says : " In consequence of numerous ingenious speculations in regard to possible advantages arising from the public works, for which lands are taken, the whole subject has become, in this country especially, involved in more or less uncertainty.   All the cases seem to concur in excluding *mere general and public benefit*, in which the owner of land shares in common with the rest of the inhabitants of the vicinity, from being taken into consideration, in estimating compensation."

It must be conceded, that the rule on this subject, recognized formerly in some adjudications in this State, has been materially changed by the provisions of the present State constitution. By the 19th section of the bill of rights, it is declared, among other things: " Where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money ; and such compensation shall be assessed by a jury, *without deduction for benefits to any property* of the owner."

And, by the 5th section of the 13th article of the constitution, it is further provided, on this subject: " No right of way shall be appropriated to the use of any corporation, until *full compensation* therefor be first made in money, or first secured by a deposit of money to the owner, *irrespective of any benefit from any improvement proposed* by such corporation."

Touching the subject of the construction of these provisions of the constitution, this court, in the case of *Giesy* v. *C. W. and Z. Railroad Company*, 4 Ohio St. Rep. 332, used the following language : " The jury are not required to consider how much, nor permitted to make any use of the fact that, it may have been increased in value, by the proposal or construction of the work for which it is taken. To allow this to be done, would not only be unjust, but would effect a partial revival of the very abuse which it was a leading purpose of these constitutional provisions to correct. It would be unjust, because it establishes for a corporation what is done for no one else, a sort of right in the property of others, to the reflected benefits of its improvement; itself submitting to no reciprocity by affording others a compensation for the effect of their improvements, upon the property of the corporation. And it is doubly unjust, where, as must very often happen, the increase in value accrued to the benefit of a former owner, and has been bought and paid for by the present holder, from whom the property is taken at a diminished price."

It is insisted in the case before us, that in estimating the compensation for the incidental injury to, or loss of value in, the residue of the tract belonging to the land owner, the incidental

37

local benefits arising from the structure of the railroad, to any part of such residue of the land, must be taken into the account in reduction of the amount of the compensation.

The constitution requires full compensation in money, and prohibits *deductions* for benefits *to any property* of the owner, from *any improvement proposed* by the corporation. It would scarcely be claimed by any one that the compensation required by the constitution was limited to the abstract value of the number of feet or acres of ground taken in the appropriation. The compensation must be broad enough to cover the full loss in value which the owner suffers in his property, by means of the appropriation for the uses for which it is made. But although it is not claimed that any deduction is to be made in view of the general prospective or resulting benefits in which the owner shares in common with others in the vicinity of the improvement, and which constituted a leading object in the grant of the important privileges by the State to the company ; yet it is insisted that incidental or local benefits may be conferred on the residue of the owner's land, by the construction of the railroad, and that in estimating the compensation to be allowed for the incidental injury or loss of value in the residue of the owner's land, the local benefits to such residue of the land are to be taken into the account and deducted ; and that, therefore, the rule of compensation for the loss in the value of the residue of the land, is the loss in value to the whole residue of the tract after deductions or allowances for the local incidental advantages. Where a local benefit or advantage is blended with, or has a direct or immediate connection with, or bearing upon, the local incidental injury, such as appears in this case in the instance of the obstruction of the free and convenient communication between the coal banks and river, which loss may be either totally or partially removed by the facilities for the transportation of coal to market afforded by the railroad, then, the local advantage or benefit may have to be taken into consideration, in order to estimate the extent of the loss, if any, in the value of the property, caused by the injury or disadvantage. For if the river transportation for getting the coal to market had ceased to be of any great value, by means of

the facilities supplied by the railroad for the transportation of the coal, the owner ought not to be compensated for the disadvantage beyond its actual value to him in the enjoyment of his property. Where, in the construction of a railroad, a ditch or excavation is made, which drains a swamp and renders a part of the owner's land valuable, which had been previously of little or no value, but the same ditch in draining the swamp, destroys a valuable spring of water, the injury and benefit may be so blended that they must necessarily be taken into consideration in estimating the compensation to be made. But where, in constructing a railroad, two ditches are made, one at one side of the owner's tract, which benefits the land by draining a swamp, and the other, at the other side of the tract, which destroys a valuable spring; or where the locality and subject-matter of the local benefit and injury are otherwise separate and wholly unconnected, although on the same tract of land, the question may be quite different. And in such case, whether, under the peculiar provisions of the constitution of this State, in estimating the compensation to be made to the owner for the local incidental injury to the residue of his land, any deduction or allowance can be made for such separate local benefit, is a question not necessarily presented in this case, and as to which we express no opinion at this time. The views already expressed in this connection have gone far enough to show, that there was no error in the instructions of the probate court to the jury.

On the other grounds, however, the judgment and proceedings of the court below are reversed.

Judgment reversed, and cause remanded for further proceedings.