Day, J.
The case originated in a proceeding before the Probate Court of Mahoning county, to appropriate land for ■a railroad. The judgment of the probate court, condemning the land for a railroad, and in favor of the plaintiffs in ■error for $2,000, as compensation therefor, was, on error, affirmed by the court of common pleas ; and a petition in ■error, filed in the district court, was reserved for decision in the Supreme Court.
The record is voluminous, and the questions made thereon are numerous, but they may be classified under three general heads: 1. Such as are of a preliminary character; 2. Those arising in the progress of the trial to the jury; 3. Those made on the charge of the court to the jury.
1. In considering the preliminary questions, it must be borne in mind that the proceeding was not under the act now in force, but was under that of April 30,1852 (S. & C. ■311). That act did not, like the present one, require the court to determine certain matters preliminary to the calling of a jury; but it was essential that the company, before it could demand a judgment of condemnation, should show that it had a corporate existence, and had complied with the law giving it the right to exercise the power of eminent ■domain.
The company did prove its incorporation by producing the certificate of the secretary of state, which the law declares shall be sufficient- evidence of that fact; hut it offered *432 no further evidence preliminary to the bearing before the' jury. Thereupon the land-owners moved the court to dismiss the proceeding, for want of further proof of the organization of the company; for failing to prove the inability of the parties to agree on the compensation to be paid by the company to the land-owners; and for not proving by record or paper evidence the line of the road adopted by the company.
To the extent of the appropriation sought to be made, the line of the road adopted was sufficiently described in the statement filed, as required by the statute, for the’ making of the appropriation. No other record or paper evidence was required by the law as preliminary to the right of the company to have the compensation for the-land so described assessed by a jury.
The general powers of a railroad corporation, after it receives its certificate of incorporation, fall into two classes r such as may be exercised before, and such as can not be until after the election of directors. Among the former is the right to receive subscriptions to the capital stock, and the election of directors; and among the latter, the location and construction of the proposed road. Ashtabula and New Lisbon R. R. Co. v. Smith, 15 Ohio St. 328. The condemnation of land for the construction of the road comeS' within the powers to be exercised by the corporation through its directors. It was therefore incumbent on the company to show, in - addition to the fact of its incorporation, that it had brought itself into a condition to exercise its powers for the construction of the road, by a full organization in the election of directors.
The statute under which the proceeding was conducted proceeds on the theory that the high power of eminent domain shall be invoked only in case the necessity arises from the inability of the corporation to agree with the land-owner upon the compensation to be paid for the land' appropriated. The inability of the parties to agree must then be proved.
For the failure of the company to prove, on the prelim *433 inary hearing before the probate court, the full organization of the company, and its inability to agree with the landowners, the court might well have dismissed the proceeding ; and its failure to do so would be fatal to its final judgment of condemnation, in favor of the company, had it not been shown, during the progress of the trial, that the company had elected and was acting by its directors, and that they were unable to agree with the land-owners upon the compensation to be paid to them. The statute did not then, as now, require the facts, preliminary to the right of a corporation to condemn land, to be shown before the impaneling of the jury. It was sufficient, to sustain a judgment of condemnation, if such facts were proved at any time before the judgment. It appearing, from the record, that these facts were shown to the court during the trial, its judgment can not be reversed for not granting the motion of the land-owners to dismiss the case.
2. After the jury were duly qualified, they were permitted, as allowed by the statute, to view the premises where the appropriation was sought to be made. A large amount of evidence was then given, affecting the amount of compensation to be assessed. Many questions were asked of numerous witnesses, by the land-owners, which were objected to by the company, and the objections being sustained by the court, they excepted to the ruling; but the record does not show what was expected to be proved in response to any one of the questions. In regard, however, to one class of questions which were ruled out, it is stated in the record, that they were asked for the purpose of proving numerous facts set forth in a long statement, most of which, if not all, was inadmissible as evidence; but in no instance is it stated what was expected to be proved in reply to any particular question, so that it is impossible to say which one, if any, of the questions was excluded to the prejudice of the party excepting. Eor this reason, therefore, a strict adherence to a well settled rule would. *434 forbid a reversal of tbe judgment for ruling out this class of questions.
But if it be assumed that the aggregate answers to this series of questions, proposed and ruled out, would have proved the facts stated, the substance of the testimony must have been inadmissible, for the general scope of the facts, not given in response to admitted questions, related to a remote and speculative value of the premises which were sought to be appropriated.
The land-owners were permitted to prove the quantity of land owned by them; the existence and probable quantity of coal thereon; the manner the coal mines were worked, and of the conveyance of the coal to market; the location and cost of a private railroad owned by them, through their lands; the extent and condition of the coalfields belonging to other persons adjoining their lands; the convenience of a ravine, in which the appropriation was sought to be made, as a roadway for all that coal region; the effect the appropriation would have on their private railroad ; and much other evidence touching the compensation to be assessed.
Thereupon the land-owners further proposed to prove that the ravine had a special value as the only roadway to market for coal on lands not owned by them, and the amount of rent that had been and could be obtained per ton for conveying coal on their railroad from mines belonging to other persons. This, so far as can be gathered from the record, was the character of the testimony ruled out. It related, not to the present actual value of the property appropriated, but to a contingent use of the property of others, which prospectively might enhance the future profits derived from the property taken. In this mode a speculative value was sought to be added to the property. This would be so far entering the domain of speculative values, that, as applied to the compensation to be assessed for property taken for a public use, it can not be said that the land-owners were clearly prejudiced by the ruling out of this class of questions.
*435 Undoubtedly the owners of the ravine, as against private persons, might demand any price, however speculative, for the supposed monopoly connected with their land; but when the land is appropriated by the state for a public use, a compensatory, not a speculative, remuneration is guaranteed by the law for the land taken, and for the damages occasioned thereby to the remainder of the premises. The difference in the value of the owner’s property with the appropriation and that without it, is the rule of compensation. This difference must be ascertained with reference to the value of the property in view of its present character, situation, and surroundings. It can not be enhanced by proving facts of a contingent and prospective character, such as the probable rents that may be derived from the property, or its special value as a prospective monopoly of a roadway to the adjoining lands of other persons. Patten v. Pailway Co., 33 Penn. St. 426; Phodes v. Baird, 16 Ohio St. 573; Goodin v. Canal Co., 18 Ohio St. 169; Lake Shore Railway v. Cin. S. & C. Railway, 30 Ohio St. 604, and cases cited on page 624.
The rejected evidence proposed by this class of questions related to an advantage or a monopoly which the landowners were supposed to have by reason of the eligibility of their ravine as a roadway for transporting coal belonging to others from adjoining lands to market. But this monopoly was contingent on the will of others to make it available, and could exist only so long as there were no other roads available for the same purpose. They had no property right in the land or coal of other parties. They could not require the coal to ,be mined, or if that was done, thej' could not demand its transportation through their ravine or over their private railroad. The construction of other roads, either private or public, though it destroyed the monopoly they could otherwise have, would be no ground for the recovery of damages, for it would not invade any right of theirs; but would be a mere destruction of one of the contingencies on which their monopoly depended. Private advantages based on such contingencies *436 must give way to the public good. No right of property existing in them, and being merely contingent and speculative in their character, they afford no ground for compensation.
Another class of questions, ruled out without the record showing what answer was expected to any particular one, related to the validity of the corporation which was causing the appropriation to be made. It is stated, however, that they were asked with a view to prove, by the aggregate testimony in response thereto, that there was no public necessity for the road, and that the incorporators of the company procured its incorporation, not for the public benefit, but for their own private purposes, and to thereby defraud the land-owners, who are parties to this proceeding, out of their property.
The testimony was not offered to disprove the due organization of the company in accordance with all the requirements of the law, nor of the abuse of its powers by the corporation itself, but to show an abuse of the law by the corporators.
As the law then stood, such questions could not be tried in a proceeding merely for the assessment of compensation for land taken in due form of law by a corporation duly organized and authorized so to do. The proceeding was by, and in the name and right of, the company, not of the corporators. Their abuse of the law, in procuring and using corporate powers, could be tested only by a proceeding in another tribunal against them to enjoin, or oust, them from the exercise of the corporate franchises. For the statute, as it then stood, proceeded on the theory, that any railroad, constructed in accordance with its provisions, by a corporation duly authorized under it for that purpose, was a public road; and that a compliance with the statute, creating a corporation for that purpose, was a legislative declaration of the public necessity for the road. There was, then, no error in ruling out the questions of that class.
The land-owners further offered in evidence the account books of a firm composed of certain persons who became *437 stockholders and officers of the company, to show the amount of coal mined on their land, and thewate and amount of rent paid for transporting coal from other lands over the land and private railroad of the plaintiffs in error during three or four years previous to the incorporation of the company. The books were rejected by the court. They were not of themselves admissible; for, aside from the objection already alluded to as to the subject-matter of the books, they related solely to transactions between those not parties to the proceeding, and no foundation was laid for their admission on special grounds. They were, therefore, properly rejected.
On the trial, one of the land-owners was permitted to answer, agaiust the objection of the company, the following question, viz: “ Iiow much less valuable will your land be in consequence of this appropriation ?” Afterward, substantially the same question was asked of another witness on the part of the company; to which the land-owners objected, and the court sustained the objection; but in so doing, at the same time, ruled out the answer already given by the land-owner; to which he excepted.
The ultimate ruling of the court, in regard to the propriety of the question as asked on both sides, would seem to be sustained by the holding in A. & G. W. R. R. Co. v. Campbell, 4 Ohio St. 583; and C. § P. R. R. Co. v. Ball, 5 Ohio St. 568. But however this may be, the ruling was made at the instance of the land-owners; therefore, they can not complain; nor can they complain because the court withdrew testimony they had given, which was admitted contrary to the holding of the court made at their instance, for the same principle was applicable to both sides of the case.
Other questions arose during the progress of the trial, in regard to the testimony, but they were of minor importance in the case, and had no such bearing on the result as to require further notice. It is sufficient to say that the rulings of the court in relation to them could work no substantial prejudice to the plaintiffs in error.
*438 3. The laud-owners submitted to the court a series of pi’opositious, which they requested to be given in its charge to the jury; some of which, for reasons that justified the court in its rejection of evidence already alluded to, were clearly unsound in law. Without, expressly responding to the request, the court charged the jury in such a manner as to exclude some of the propositions, and include the others. The land-owners excepted to no point of the charge in particular, but excepted in general terms to the refusal to charge as requested, and to the charge as given. The charge being for the most part, if not entirely, correct; and some of the propositions requested to be given to the jury beipg unsound, under a well settled rule, such general exception raises no question on any particular point, on either the refusal to charge as requested or the charge as given. Adams v. State, 25 Ohio St. 584.
One specific objection, however, relates to the charge. The charge was in writing, and read to the jury ; but at the conclusion, the court added an unwritten remark, to which, as soon as the jury retired, the land-owners excepted. Thereupon the court recalled the jury, added the remark in writing to the charge, and read it to the jury; to which recalling, writing, and charging the jury anew, the landowners excepted. There was no error in the proposition added to the charge, nor in recalling the jury and giving it to them in writing with the rest of the charge.
It is said in argument that a hundred and fifty exceptions were taken in the case. "We have not counted them; but, so far as they are properly presented by the record, and affect the substantial rights of the parties, they are, it is believed, included and disposed of under one or the other of the classifications we have made of them; no further discussion, therefore, in regard to them is required.

Judgment affirmed.