The term "road" as found in the act now appearing in the General Code and here in question must be defined by the court, after a consideration of all the terms and provisions of the act. So, taking this law by its four corners, we are unable to say that the word "road" as here used includes an alley.

Having reached these conclusions with respect to the two things which we have already discussed, it is unnecessary for us to take up any other elements of the case.

Our finding is that the resolution of the board of county commissioners should be vacated and that the defendant Wittler should be enjoined as prayed for in the petition.

---

## ATTEMPTED APPROPRIATION BY A MUNICIPALITY OF PROPERTY IN WHICH IT HAD A PERPETUAL LEASE.

Common Pleas Court of Hamilton County.

EDWARD B. SARGENT AND SOPHIE SARGENT, v.
THE CITY OF CINCINNATI.*

Decided, April Term, 1923.

*Eminent Domain—Injunction Proper to Test the Conditions of Appropriation Proceedings—Right of Municipality to Condemn Property not Impaired by Existence of a Contract to which it is a Party—Procedure for Assessing Compensation Adequate for All Cases—Appropriation of Property in Which the Municipality Already has Perpetual Lease not an "Appropriation for Public Use."*

1. Since in proceedings to appropriate real estate no issue can be raised as to the "right to appropriate," and the Ohio statutes do not provide for a judicial determination of the conditions of such proceedings, the party whose property is sought to be appropriated may have recourse to injunction to test such precedent conditions.

2. The fact that at some prior time the municipality had entered into a contract with reference to the subject matter sought to

* Judgment reversed by the Court of Appeals; judgment of the Court of Appeals reversed and that of the Common Pleas affirmed by the Supreme Court, June 3, 1924.

be appropriated does not limit its **power to appropriate** in ⌈ sequent proceedings, and no constitutional rights are thereby violated.

3. The procedure provided by law for assessing the amount of compensation to be paid is adequate even in cases where special conditions exist, as where the market value of the property is less than its value under a lease, inasmuch as such special conditions are admissible in evidence to enhance the amount of the damages.

4. Where the municipality already holds a perpetual lease, no extension of time of occupancy would be gained if it seized the fee title, and its doing so, merely to amortize the ground rent, would not be "appropriation of property for public use."

*Mallon & Vordenberg,* for plaintiff.

*Saul Zielonka,* City Solicitor.

*Dennis J. Ryan,* Asst. City Solicitor, for defendant.

MATTHEWS, J.

This is an action in which the plaintiffs seek to enjoin the defendant from prosecuting a proceeding in this court for the assessment of compensation by a jury to be paid to the plaintiffs for the appropriation by the defendant of the fee simple title to real estate for water works purposes.

The cause comes before the court upon the defendant's demurrer to the petition on the ground that the court has no jurisdiction of the subject of the action, and that the petition does not state facts sufficient to constitute a cause of action.

By the allegations of the petition, which are admitted for the purpose of this demurrer, it appears that in 1869 the defendant by its duly authorized officials, leased the identical property, the fee simple of which is now sought to be appropriated, from one Joseph C. Butler for water works purposes, and that by the terms of this lease the defendant was granted an estate therein to itself and its assigns "for and during the full term of ninety-nine years from and commencing with the 15th day of April, A. D. 1869, and renewable thereafter forever on the terms and conditions hereinafter expressed; but the terms and renewal or renewals thereof are granted and are to exist and continue only on condition that the said the City of Cincinnati and its assigns, pay the rents and perform the covenants hereinafter assumed and entered into by said city."

The City of Cincinnati agreed to pay ''as rent and compensation for the use of said demised premises, the annual sums of two thousand four hundred dollars ($2,400), to be paid during each and every year of said term and of all renewals hereof.'' The only conditions imposed by said lease upon the City of Cincinnati were that it should pay the rent within thirty (30) days after the same shall become due and payable and any taxes within the time limited by law. And upon the failure to perform either of said conditions the lessor was given the option to terminate said lease and immediately to re-enter upon said demised premises.

The plaintiffs are the successors in title of Jos. C. Butler, and they seek to enjoin the proceedings to assess compensation to them for the value of the fee simple title: first, because the defendant is now using the property for the same purposes for which it is seeking to appropriate the same under a title that will endure as long as a fee simple title; that while the defendant may not have the legal fee simple title, it has a perpetual leasehold, renewable forever automatically upon payment of rent and taxes and that that leasehold is the full equivalent of a fee simple title in duration and for the same purposes, to-wit, water works purposes, and that therefore, whatever may be the motive, reason or purpose of the defendant in now attempting to appropriate the fee simple title, it is not a public purpose and therefore not susceptible of fulfillment through compulsory appropriation under the right of eminent domain; second, that to permit the defendant to now appropriate the fee simple title will impair the obligations of the defendant under the contract which it entered into in 1869, and will deprive the plaintiffs of their property without due process of law and deny them the equal protection of the law in violation of Section 1 of Article XIV, of the Constitution of the United States, and Sections 1 and 19 of Article 1 and of Section 28 of Article II of the Constitution of Ohio.

At the threshhold of a consideration of the demurrer to this petition is presented the question of whether or not injunction lies to restrain a proceeding in Ohio by a municipality, to appropriate property under the right of eminent domain. Counsel

for the defendant urges that injunction does not lie for the reason, as he contends, that all the questions sought to be presented by this petition may be raised by appropriate pleadings in the proceeding to assess compensation; in other words, in the proceeding which this action seeks to enjoin.

It seems to the court that there are only two cases in Ohio that need be considered upon this question. The first is that of the *P. C. C. & St. Louis Ry. Co.* v. *City of Greenville,* 69 Ohio State, 487. In that case the railroad company sought to enjoin an appropriation proceeding by a municipality under the same section of the statute under which the defendant seeks to proceed in this instance, and at pages 492 to 499 both inclusive, the court discusses this subject exhaustively. The court points out at page 492 that the provisions for appropriation by municipal corporations are not governed or controlled by the general statute for the appropriation of private property by corporations, but are governed exclusively by what are now sections 3677 to 3697 General Code, and at pages 494, 495, 496 and 497, the court says this upon the subject of whether or not this statute provides a plain, adequate and complete remedy at law:

"Where, in all these provisions, is there a forum in which can be determined the condition to the exercise of power to appropriate in such cases: to-wit, that 'such appropriation will not unnecessarily interfere with the reasonable use of the property so crossed by any such improvements,' as found in Section 2233. This fact must be found somewhere in order that the municipality may extend 'streets or alleys across railway tracks and lands held or owned by railway companies.' No doubt exists that the inquiry may be made before the village or city council where the resolution to apprpriate is pending, and the notice to the holder or owner of such railroad property is required in order that objections to the appropriation may be made before the passage of the resolution. But is such opportunity, or remedy, if it be one, exclusive? Is it adequate? Let us see. The council has no authority to call or summon or swear witnesses. No issue can be made up before it on the important question.

\*          \*          \*          \*

But counsel for defendant in error state on page eight of their brief that the right to appropriate under the condition fixed by Section 2233, can be determined in the probate or common pleas court where the application is filed as provided in Section

2236 * * * .We have said that in proceedings to appropriate for streets and alleys, etc., by municipal corporations, the council makes the appropriation by resolution, and when that is properly done, the next step is the filing of an application in one of the courts, in order to have compensation to the owner made by a jury in a constitutional manner. The application may be filed in the probate court, which, on such subjects, has merely statutory jurisdiction. And if it be filed in the court of common pleas, it still is a special proceeding and strictly regulated by statute.

There is no provision by which the railway company has a right to file an answer to the application in either of the courts. Answer to what? The application would contain the proceedings before the council, including the resolution to appropriate and the giving of the preliminary notices, and a pertinent description of each parcel of property appropriated, and ask for the impaneling of a jury to assess compensation. An 'answer to such application would *present no issue on the right to appropriate.* The court, on such an application, makes no order of appropriation, if the statute is followed, because Sec-2238 provides that, 'If it appear to the court or judge that such notice has been served five days before the time of the application or has been published as providd in the preceding section,' and that such notice is reasonably specific and certain, the court or judge may set a time for the inquiry into and assessment of compensation by a jury,' etc. *Nor is there any authority for filing a cross petition by the railway company setting up the unnecessary interference with its property.* No provision is made for the making or trial of such an issue, and the court is without authority to render a judgment upon such issue if made. In practice, counsel may instance a case or cases, where some such pleadings were allowed to be filed against the application, and an inquiry made under it. We can not find any authority for it even by implication from the statutory provisions on the subject. Even if, in the exercise of the discretion of the court, such an answer or cross-pleading can be filed it can not be respected as a remedy, much less an adequate remedy at law. A party has no adequate legal remedy if it wholly exists in the discretion of a court. To be adequate and legal it should be one that he can invoke without let or hindrance, as to the assertion of his rights.''

So far as the court can see, the only difference between the case at bar and that of *Railway Co.* v. *City of Greenville, supra,* is that the latter considered paragraph 1 of Section 3677 limit-

ing the right to appropriate a right of way across railway tracks to instances where such appropriation will not unnecessarily interfere with the reasonable use of the property so crossed, whereas, the case at bar involves a consideration of paragraph 13, authorizing appropriation "for providing for a supply of water," etc. In *Railway* v. *Greenville*, the court held that there was no adequate remedy at law in the statutes providing the method of appropriation by municipalities for the determination of the question of the condition precedent imposed by paragraph 1, and it can be equally said in the case at bar, that those statutes make no provision for the judicial determination of the condition precedent imposed by paragraph 13, to-wit, that the appropriation is "for providing for a supply of water," etc.

The other case that should be considered in this connection is that of *The Cleveland & Pittsburgh Railroad Co.* v. *The City of Martins Ferry*, 92 Ohio St., 157, and defendant's counsel relies particularly upon the syllabus thereto as supporting his position that the issue can be raised and determined in the appropriation proceeding. In the opinion of the court that case is inapplicable for the following reasons: the court there construed the grade crossing act, Section 8897 et al, General Code, in which is found provided a remedy much broader than that provided in Section 3677, General Code. Indeed, by Section 8898 General Code, the grade crossing statute makes the remedy of the defendant as broad as the code of civil procedure itself by providing that:

"Summons shall be served and the rule days and rights of the defendants to plead shall be the same as in civil actions in such courts."

While it is true that the court held that the condition precedent imposed by Section 3677 General Code might be raised and adjudicated by appropriate proceedings under the grade crossing statute, what it said in that connection was said in the light of the general remedy provided by Section 8898 General Code. At no place in the opinion does the court say that in a proceeding under Section 3677, General Code alone, is there any rem-

edy provided for the determination of the conditions precedent to the assessing of compensation. That the court did not so intend to state is manifest fiom the fact that it cited with approval the case of *Railroad Co.* v. *The City of Greenville, supra,* and furthermore by the fact that the case of the *Cleveland & Pittsburg R. R. Co.* v. *City of Martins Ferry,* in which the opinion was announced, was an action to enjoin an appropriation proceeding, and the court reversed the judgment for the reason that the trial court erred in overruling a demurrer to an answer thereto alleging a prior adjudication, and directed that the cause be remanded for further proceedings.

The court is therefore of the opinion that the statutes authorizing municipal corporations to appropriate property for public purposes in Ohio, do not provide a plain, adequate and complete remedy for a judicial determination of the conditions of appropriation, and on the authority of *Railroad Co.* v. *Greenville, supra,* the court holds that the property owner has the right to have those conditions judicially determined before the municipality may proceed with an action to assess compensation, and that in an appropriate case, injunction may issue restraining the municipality from proceeding.

This brings us to a consideration of the allegations of the petition for the purpose of determining whether or not the plaintiffs have alleged facts entitling them to an injunction restraining further procedings on the part of the defendant.

It is urged by the plaintiffs that the allegations of the petition show that to permit the consummation of the appropriation proceeding would result in the impairment of the defendant's contract contained in the lease of 1869, and also sanction the taking of property without due process of law in violation of constitutional provisions. It seems to the court that counsel in taking this position disregarded the fundamental proposition that all private property is held subservient to the public good and subject to be taken by sovereign authority in the exercise of the right of eminent domain, upon the payment of just compensation, and that no constitutional provisions relating to the sanctity of private property and the inviolability of contracts

are limitations upon the proper exercise of the right of eminent domain.

In the case of the *City of Cincinnati* v. *Louisville & Nashville R. R. Co.*, 223 U. S. 390, it was held, as stated in the syllabus:

"The power of eminent domain extends to tangibles and intangibles, including choses in action, contracts and charters.

An appropriation under eminent domain with compensation of a contract neither challenges its validity nor impairs the obligation. It is a taking, not an impairment, of its oblgation.

Every contract, whether between the state and an individual or between individuals only, is subject to the law of eminent domain, for there enters into every engagement the unwritten condition that it is subject to appropriation for public use."

In *Railway* v. *Memphis*, 126 Tenn., 267, annotated cases 1913-E, 153, the limitations upon the exercise of the right of eminent domain are stated in this language:

"The power of eminent domain is the inherent attribute of sovereignty without limitation or restriction, except and subject to the constitutional limitations that private property can not be taken for private purposes at all, nor for public use without compensation."

So the court concludes that the fact that at some prior time the municipality had entered into a contract with reference to the subject matter sought to be appropriated, would not, because of any constitutional provision, limit its power to appropriate in a subsequent proceeding, provided the use to which it was to be dedicated was a public one.

It is next urged that assuming that the municipality might be authorized to appropriate this property, that the procedure created by law is fatally defective for the reason that there is no provision for an award of the value of this leasehold estate. It is suggested that the city authorities are under the impression that in the appropriation proceedings, the issue will be submitted to the jury as to what the fair market value of the real estate sought to be appropriated is, and that no account will be taken of the existence of this perpetual leasehold; that inasmuch as the value of the land has depreciated materially since the execution of this leasehold, the result will be that the jury

will award a sum entirely inadequate to represent the value of the leasehold estate, in which an entirely solvent lessee has agreed to pay $2,400 per year and taxes until the year 1968.

Counsel for the defendant repudiates the suggestion that the purpose is to in any way lessen or impair the value of the plaintiff's contract with the defendant, and it seems to the court that if the city officials have such an impression it is an erroneous one.

Section 19, of the Bill of Rights of the Constitution of Ohio, provides that:

"Private property shall ever be held inviolate but subservient to the public welfare. When taken * * * a compensation shall be made to the owner in money." etc.

As was said in the *Cleveland & Pittsburgh R. R. Co.* v. *Ball,* 5 Ohio St., 568, at 575:

"The provisions of the constitution of this state on this subject are somewhat different from the provisions in the constitutions of some of the other states. Full compensation is required to be made to the owner in money for the appropriation of his property as a condition precedent. To be a full compensation it must be a remuneration or recompense for that detriment or loss to the owner in the value of his property, arising from the taking of his property in connection with the use for which it is taken."

It is true, that ordinarily the measure of damage where real estate is appropriated is the fair market value at the time of the appropriation and to determine the fair market value expert testimony so-called is admissible, of sales. But in every case the ultimate rule is that the citizen whose property is appropriated is entitled to full compensation for the damage resulting, and where special conditions exist, those conditions are admissible in evidence to enhance the amount of the damage.

Thus, in the case of *Foote* v. *The Lorain & Cleveland Ry. Co. et al,* 21 C. C., 319, it was held proper in determining the value of land to introduce evidence of the value of a well and the cost thereof; and in *Cincinnati* v. *Neff,* 20 Weekly Law Bulletin, 8, at page 10, the jury was told:

"Still another mode of ascertaining the value of improved

real estate is by taking testimony as to the amount of rent it produces. By this I mean the rent which the owner may have derived from the property for so long a time that it may be called a steady, permanent rental, and may reasonably be expected to continue in the future, always provided that the conditions are likely to be of such a character as that the rent will continue to be substantially the same.. In this connection you must take into account the probable life of the improvements, and the effect of their depreciation on the rent. If the property be adapted to and be put to a continuous use, if the rental be a permanent one, with reasonably good tenants, if the life of the improvements be fairly allowed for, and the same condition of things be likely to continue, I can see no reason why the rental test should not be one of the best in determining the fair, reasonable, and at the same time, full value of improved real estate.''

The rent is an incident of the reversion, and a condemnation of the reversion necessarily includes a condemnation of the obligation of the lessee to pay rent. Tiffiny on Landlord and Tenant, p. 1101; *Smith* v. *Harrison*, 42 O. S., 180 at 182.

So the court can see no insufficiency in the procedure provided by law for the awarding of full compensation to the plaintiffs for their property sought to be appropriated in the appropriation proceedings.

It is finally urged that the allegations of the petition show that the defendant is seeking to appropriate the fee simple title for some other than a public use. The petition discloses that the defendant already has a lease for ninety-nine years renewable forever. The lease imposes no conditions precedent to a renewal other than the payment of the taxes and the rent.

The court is of the opinion that under the terms of the lease, the option of renewal rests with the lessee, and that therefore it is bound only to pay the rents until the expiration of the ninety-nine years term. Tiffany on Landlord & Tenant, Section 221; Gray's Rule Against Perpetuities, Section 230. Its right of renewal is exercisable, however, without the giving of any notice, or the performing of any act of renewal whatsoever. Mere continuance of the payment of the rent and the taxes will effect a renewal. While it is true that in the decision of *Rawson et al*

v. *Brown,* 104 Ohio St., 537, the title of the defendant does not rise to the dignity of real property, still, notwithstanding the fact that the title under the law is chattel, its right to occupy the land is for a period as indefinite as it would be were it to own the fee simple title absolute. By the terms of the lease it is "renewable forever," and the duration of a fee simple estate can not endure longer.

Counsel for the defendant cites the case of *Tait's Executor, et al* v. *Central Lunatic Asylum,* 4 S. E. (Va.), 697, as an authority for the proposition that notwithstanding the city may own a leasehold, it may condemn the fee simple in the exercise of eminent domain. In that case, the lease was for a period of ten years and was not renewable at all, and in the opinion of the court, that furnishes a sufficient distinction between that case and the case at bar.

Counsel also cites the case of *White* v. *The City of Cleveland,* 14 C. C. (N.S.), 369, as an authority for the proposition that the fact that the municipality has already a limited interest in land, does not prevent an appropriation of the absolute fee simple. In that case the facts were that the city of Cleveland had condemned certain property in 1872 "for park purposes," and thereby acquired an easement for that purpose. In 1906, authority was conferred upon municipalities to appropriate the entire fee simple title, and authorizing it to re-appropriate any property which it had previously appropriated to order to perfect in it a title in fee simple absolute; and further enacted that:

"Provided that when any city owns real estate suitable for the location of a passenger railroad station, and council shall by ordinance declare that it is necessary, * * * , it shall be competent for such city to sell or lease or exchange such land to such railroad or railroads for such purposes."

What the court held in *White* v. *Cleveland,* was that the city was seeking to and had the right to appropriate the reversioners interest for an additional purpose, and this is shown by the language of the court at page 375:

"The whole act must be construed together and so construing it, it is perfectly apparent that the Legislature intended

that appropriation should be authorized for the purpose defined in the resolution and the object proposed in the application, plus the right to sell, lease or exchange the lands appropriated to a railroad or railroads, for depot purposes, if the same should be suitable for the location of a passenger railroad station.

*This gives a specific or good reason or purpose for the pending appropriation,* although it is not required by the statute to be stated in the resolution or application, for the power to sell, lease or exchange is found in the chapter of the municipal code referring to the sale or lease of property. * * *

A study of the act of 1906 confirms the suggestion of counsel for plaintiff that its enactment was procured by the city of Cleveland for the very purpose of getting rid of the rights of reversioners in Lake View Park, or acquiring them, so that the city might dispose of part of said park to the railroads for depot purposes.''

Was there anything unlawful in this legislation, prohibited by the Constitution?'' And the court held that there was not.

In the case at bar the defendant has possession in perpetuity of the real estate in question for water works purposes. It acquired this right to perpetual occupancy under the terms of a contract which bound it to pay $2,400 per year. The proceedings sought to be enjoined are for the purpose of appropriating the fee simple title for *water works purposes.* No other purpose is stated. The defendant has the right undr its existing title to continue for all time to occupy this property for the purpose for which it now seeks to appropriate the fee simple title. The carrying of the appropriation proceedings to their final conclusion would not increase the duration of the defendant's occupancy of the premises a single day and would have no effect to widen the purpose for which it might occupy them. The only effect, as the court sees it, would be to amortize the ground rent. That would not be an appropriation of property for a public use. The property desired for water works purposes is not the intangible ground rent, but the tangible land. The defendant now has the latter for water works purposes forever, and a second formal condemnation for the same purpose would in fact accomplish no purpose, and therefore not a public purpose.

The court is of the opinion that the demurrer should be overruled and it is accordingly done,