REBECCA B. MITCHELL, Executrix, etc., Respondent, *v.* CASSIUS H. READ, Appellant

The fact that a lease of premises, used by a firm for copartnership purposes, is to one of the copartners does not authorize him to take a renewal lease in his own name and for his own benefit; and a renewal will inure to the benefit of the firm.

M., plaintiff's testator, and defendant were formerly partners carrying on a hotel, the leases for which expired at the time fixed for the termination

of the partnership. Prior to that time defendant, without the assent or knowledge of his partner, procured new leases in his own name for terms beginning at the termination of the partnership, which, upon discovery of the fact by M., he claimed to hold exclusively for his own benefit. This action was brought to have M.'s interest in the leases declared and adjudged. It appeared that during the pendency of the action M. brought another action for a dissolution of the partnership and sale of its effects. The judgment therein directed, among other things, a sale of the furniture and fixtures belonging to the firm, leaving the question as to the disposition of the leases to be determined in this action. Sale was made accordingly, the property bid off by defendant, and M. received his proportion of the purchase-price. Upon the final trial herein, which did not occur until after the expiration of the new leases of which defendant had had the benefit, plaintiff was allowed to prove, as a basis for computing damages, what the furniture, good-will and leases if put up for sale together would have brought, the partners each having a right to bid at the sale. *Held,* no error.

(Argued March 8, 1881 ; decided March 22, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 12, 1879, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 9 Hun, 418.)

This action was commenced in March, 1870, by James L. Mitchell, the testator of the present plaintiff, to have it adjudged that certain leases obtained by defendant during the existence of a partnership between him and said Mitchell were taken for the benefit of the partnership, and were held by defendant as trustee, etc.

It is reported on the former appeal in 61 N. Y. 123.

Mitchell and defendant were partners in the business of keeping a hotel in the city of New York, known as the Hoffman House. They held the hotel and premises under leases which expired on the 1st day of May, 1871, and the copartnership between the parties, by the terms of their agreement, expired at the same time. In 1869, the defendant, without the knowledge or consent of Mitchell, procured in his own name a lease of the hotel and premises for another term to commence at the ex-

piration of the partnership, and claimed the sole and exclusive right and benefits under the new lease.

Upon the first trial of the action the court held that the plaintiff had no right or interest under the new lease, and judgment was rendered accordingly for the defendant. Upon the appeal to this court the judgment was reversed, and a new trial directed, the court holding that the new lease and the goodwill incident thereto belonged to the copartnership. It was proved upon the second trial that in March, 1871, just after the decision upon the first trial, and before any appeal had been taken therefrom, Mitchell commenced another action against the defendant herein, alleging that, owing to the disagreements between the parties in relation to the manner in which the new lease to the defendant had been taken, and his exclusive claim thereunder, and other matters, the partnership between the parties should be dissolved; and that the assets thereof, consisting of the leases, furniture, fixtures and personal property upon the leased premises, debts and credits and good-will belonging to the partnership, should be sold, etc. A receiver was appointed in said action, who was directed by the court to sell the furniture, fixtures and other assets to the parties, or either of them, or to any other person. Accordingly the receiver did sell to the defendant the fixtures, furniture and other household articles belonging to said firm and then being in said hotel, and also the books of account and debts due the firm; and the plaintiff also executed a bill of sale or instrument for the purpose of assuring and confirming said sale by the receiver; this sale was confirmed by the court in the decree or judgment in said action, on the 26th day of October, 1871, in which judgment, entered upon the application of the defendant, it is declared that said copartnership has been dissolved by affluxion of time, and that all the property and effects of said partnership have been by the receiver converted into cash, " except certain leases claimed to be partnership property of the plaintiff and defendant, which are the subject of a former action between them, now on appeal before the General Term," etc.; in said decree it was also adjudged, " that it appearing that the so-

called renewal leases embraced in the complaint herein have been subjects of adjudication in said suit now on appeal, no judgment or decree respecting them is made in this action."

After proof upon the trial of the net profits of the Hoffman House during the partnership, this question was asked one of plaintiff's witnesses, an old hotel-keeper and experienced in the business, and was repeated in substantially the same terms to other witnesses having a like experience.

"Q. Assuming the statement made by Mr. McCarty, in regad to the net profits of the Hoffman House for the five years preceding the 1st of May, 1871, to have been as stated by him, and that the average annual net profits during those preceding five years were $128,565, and that the net profits for the last year, immediately preceding the 1st of May, 1871, were $147,883; can you state what was the value of the three new leases to which your attention has been called, extending from the 1st of May, 1871, onward, including the furniture and good-will, as on the 1st of May, 1871, to the partners Read and Mitchell, or either of them, or at a sale at which those partners, or either of them, or any other person, would be entitled to bid?" This was objected to on the ground among others that it improperly included the good-will of the house and the furniture. The objection was overruled and defendant's counsel duly excepted.

*W. O. Bartlett* for appellant. Tenant-right of renewal, wherever it exists, except by contract, is of feudal origin, and an incident of feudal tenure. (Wright's Introduction to the Law Tenures, 1–2; History of the Law of Tenures of Land, 39, 40, 41; 1 Spence's Equitable Jurisdiction, 12, 13; 2 Blackstone, 47, 53; *Watson* v. *Master of Hemsworth Hospital*, 14 Ves. 324.) Where a tenant-right of renewal does not exist by feudal custom, or by contract, it does not exist at all, and the phrase is a misnomer. (*Mitchell* v. *Read*, 61 N. Y. 140; Taylor's Landlord and Tenant, note 211; 1 Platt on Leases, 705; *Watson* v. *Master of Hemsworth Hospital*, 14 Ves. 332,

338.) If there was any tenant-right of renewal it was in Cassius H. Read, the assignee of the original lease, and not in the firm of Mitchell & Read, who were only his sub-lessees. (*McFarlan* v. *Watson*, 3 N. Y. [3 Comst.] 286 ; 1 Washb. on Real Property, 447 ; *Martin* v. *O' Connor*, 43 Barb. 522.) There was no violation of trust on the part of Read. (Sandf. Ch. 407 ; *Featherstonhaugh* v. *Fenwick*, 17 Ves. Jr. 298, 311.) The measure of damages adopted by the court below was erroneous. (*Creetwell* v. *Lye*, 17 Ves. 335 ; *Morgan* v. *Schuyler*, 79 N. Y. 493.) Good-will is not a commodity on which a specific value can be placed, or for which a definite allowance can be made. (Story on Partnership, § 99 ; *Wedderburn* v. *Wedderburn*, 22 Beav. 84 ; *Chenton* v. *Douglas*, Johns. Ch. 174 ; *Ex parte Thomas*, 12 M., D. & DeG. 294 ; *Coslake* v. *Lill*, 1 Russell, 376 ; *Davies* v. *Hodgson*, 25 Beav. 177.) There can be no such thing as good-will, except as connected with a business. (*Robertson* v. *Quiddington*, 28 Beav. 529 ; *Wedderburn* v. *Wedderburn*, 22 id. 84 ; Collyer on Partnership, § 162 ; *McFarland* v. *Stewart*, 2 Watts, 111.) The business having expired by its own limitation, and the assets having been sold out by a receiver and the plaintiff, at his instance, there was nothing to which good-will could attach. (61 N. Y. 140 ; *Musselman's Appeal*, 52 Penn. St. 82 ; *Robertson* v. *Quiddington*, 28 Beav. 529 ; *Wedderburn* v. *Wedderburn*, 22 id. 84.) The partnership having been closed up at the instance of the plaintiff, and all the property, with the exception of the renewal leases, having been sold to the defendant, the good-will, if any, passed with that sale. (Collyer on Partnership, 288–290 ; *Banks* v. *Gibson*, 34 Beav. 566 ; *Hall* v. *Hall*, 20 id. 141 ; *McFarland* v. *Stewart*, 2 Watts, 111 ; *England* v. *Downs*, 6 Beav. 269 ; *Berry* v. *Bedford*, 4 De G., J. & S. 352.)

*John E. Burrill* for respondent. The leases in question belonged to the firm of Mitchell & Read, and formed a part of its assets, and defendant, as trustee for the firm, was bound to account to the plaintiff in respect thereto. (61 N. Y. 123,

143.) The leases taken by Read in his own name during the existence of the partnership of Mitchell & Read, and without the knowledge of his copartner, inured to the benefit of the firm, and Read was bound to account to the plaintiff's intestate as trustee in respect thereto. (61 N. Y. 132, 136.) When on a dissolution one partner obtains exclusively the benefit of the good-will, and is made accountable for it, the court, in ascertaining its value, considers what it would have produced if sold in the most advantageous manner, and at the proper period of time. (*Mellish* v. *Keen*, 28 Beav. 453; *Smith* v. *Everett*, 27 id. 446; Collyer on Partnership, § 322 and note; *Bagley* v. *Smith*, 6 Seld. 489; *Wade* v. *Jenkins*, 2 Giffard's Ch. 509.) The good-will of the business formed a part of the assets of the partnership, and as the defendant, by means of the leases, appropriated this to his own use, he is bound to account to his copartner for its value. (*Dougherty* v. *Van Nostrand*, 1 Hoff. Ch. 269; *Williams* v. *Wilson*, 4 Sandf. Ch. 380; *Curtwell* v. *Lye*, 17 Ves. 346; *Crawshay* v. *Collins*, 15 id. 224; Collyer on Partnership, § 162; *Martin* v. *Van Shaick*, 4 Paige, 480; 61 N. Y. 123; *Hall* v. *Barrows*, 32 L. J. Ch. 548; *Stewart* v. *Gladstone*, 38 L. T. R. [N. S.] 557; *S. C.* 47 L. J. Ch. 423.) In ascertaining the value of the leases, the good-will which the defendants thereby secured was properly taken under consideration. (*Boon* v. *Moss*, 70 N. Y. 465; *Morgan* v. *Schuyler*, 79 id. 490; *Williams* v. *Wilson*, 4 Sandf. Ch. 380; *Dayton* v. *Wilkes*, 17 How. Pr. 510; *Cartwell* v. *Lee*, 17 Ves. 346; *Crawshay* v. *Collins*, 15 id. 224; Collyer on Partnership, § 162; *Martin* v. *Van Shaick*, 4 Paige, 480; 61 N. Y. 123.)

FOLGER, Ch. J. The adjudication in this case, announced in 61 N. Y. 123, is binding upon the parties, and hence upon the court, unless a state of facts materially different from that there presented was shown upon the last trial. We do not understand that upon the vital question in the case such difference is claimed, save in this: that before, it did not appear but that the leases in the first instance were to the parties jointly, while

now it is shown that the leases, for the most important and useful part of the premises, were to the defendant alone, directly or by assignment. This fact does not affect the principle on which the former adjudication was based, for it is said to be a universal rule that no one who is in possession of a lease, or a particular interest in a lease, which is affected with any sort of an equity in behalf of third persons, can renew the same for his own use only, but such renewal must be considered as a graft upon the old stock. (See *Moody* v. *Matthews*, 7 Ves. 185 [Sumner's ed.], note.) It is well to observe, also, that it is noticed in the opinion of DWIGHT, C., in 61 N. Y. (*supra*), that the leases in the case in hand were in different forms and rights, some being to the party directly, and others, "through a series of transactions, * * * vested * * * in the partnership." It is for us, then to inquire, only whether there were errors committed in the conduct of the last trial.

It is claimed that the measure of damages adopted by the trial court was erroneous. The question put to the witnesses, who were called by the plaintiff to speak to the damages, assumed that it was proper to consider the furniture and good-will as put up for sale together with the leases, and that the parties, or either of them, had a right to bid, and that what those three together would bring at such a sale was a basis for a computation of damages.

It is objected that the furniture and the good-will were not proper constituents in the inquiry. The furniture had already been sold with a confirmation of the sale by the plaintiff's testator, and the purchase-price had been paid by the defendant.

But that sale was brought about as a necessity of the termination of the partnership of the parties, and not as an interference by the plaintiff's testator and a voluntary or willful act on his part. As the matter stood when this suit was begun, the testator was entitled to an interest in the leases renewed, in the furniture, and whatever else was a thing of partnership value. It is manifest that the property of a partnership engaged in the business of keeping a public house is more valuable if that property may be kept together at the place of business to which

the customers were used, and in the hands of those to whom they were used, with the right to carry on the same business at that place by the same proprietors for a fixed term, than if put up for sale with the need upon most bidders for it, including one of the partners, of taking it elsewhere into other business or into a new place for the same business. The defendant had done damage to the testator by bringing about that last-named state of things, and one element of that damage was the diminution in value to the testator of his interest in the property as thus affected.

So it was an element in the estimate of damage, what the property would have brought, had there gone with the sale of it the right to keep it on at the same place in the same business. The law's delay, and the course of events, had precluded the plaintiff's testator from an enjoyment of the leases, and there was no practicable way of learning what was his damage from the act of the defendant, but to inquire what the leases and property would have been worth if still united in interest and enjoyment, and thus offered for sale. It is not claimed, but that the suit of the testator to dissolve the partnership and to close its affairs and to convert its assets into money for division was well brought and properly closed. The leases would have been made a part of the assets then sold or disposed of, had it not been for the pendency of this suit, brought to overcome the resistance of the defendant to the testator's claim of a right therein. The leases were excepted from the judgment in the other suit, because of this litigation. But for it they would have been sold at the same time with the other property, and the product of all thus sold would have been the avails in which the testator would have shared. It is the right of the plaintiff now to be put as nearly in that position as is possible, and the practicable way to do that is to find out what would have been the result in money if she or her testator had then been therein. We think that there was no error in making the assumption on which to get the judgment of the witnesses, so far as the furniture, stock in trade, and accounts current and the like were concerned.

The matter of the good-will is made a subject of separate consideration in the points of the defendant. That there is such a thing as good-will, which is a matter of value in such a business, is not to be denied, nor that it is a part of the assets of a copartnership in that business. Doubtless, some of it, as is suggested by the learned counsel for the defendant, grows from satisfaction of customers with the individuals composing the partnership. The manifestation of it is, however, so much attached to the place at which the business has been done, as that it enhances the value of the lease of the place to the partners jointly, or to any one of them. Hence it has generally been held that, where a lease is partnership property, the good-will of the business enters into the value of the lease, and affects the amount of the purchase-price. The good-will of the business of the testator and the defendant was a valuable matter in which they had a joint interest,— it was a part of their joint property. There could be no just and equable division thereof between them without each got his share thereof. If his share was to be had by a sale of the joint assets, that good-will must then be sold, or he would not have his share, and to reach its full value it must go with the lease of the place. And inasmuch, because of the matters above stated, the leases could not be sold at the time other property was sold, it was proper to consider what would have been the value of both, had they been sold together. The question also assumed that the partners, or either of them, had a right to bid at the sale of the leases. This is criticized, for that this suit proceeds on the ground that the defendant had no right to obtain the leases to himself to the exclusion of the testator, and that, if that ground be well taken, he would have no right to bid at the sale. Manifestly there is a difference between acquiring the leases from the landlord privily, to the wrong and harm of the co-tenant and copartner, and publicly bidding at a judicial sale of them with the sanction of the court, and on no more than equal terms with all others interested. Nor is the point of merit that the copartnership having expired of its own limitation the matter of the good-will could not enter into consideration. The wrong

Statement of case.

of the defendant began before the partnership had terminated, and it consisted in prematurely and privily obtaining the leases without giving his copartner a chance to seek the same, either jointly or solely. If that chance had been given the testator, he could have put his own estimate on the good-will and brought that estimate into the data on which to make up his offer for a lease, or in some other way he might have been compensated for his share in it. It is claimed that the good-will went with the sale and transfer of the property of the parties other than the leases. Grant that it is so. That does not preclude the plaintiff from an inquiry of what would have been its value had the leases accompanied the rest of the property. She has now had it determined that her testator had a right in the new leases. That was not then adjudged. In an inquiry into the damages for having that right denied and refused, it is competent to ask how the sale of the leases with the good-will would have affected the value of the latter. Nor is it a matter that works a total denial of damages, that the testator went into business in rivalry with the defendant, and in proximity to him. If that is a matter to enter into the estimate of damages, we cannot say that it did not.

These views cover the points made by the defendant

We think that the judgment should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.