Johnson, C. J.
In Burckhardt v. Burckhardt, 36 Ohio St. 261, it was held: 1st. That the entirety of the consideration which Frederick agreed to pay Leopold for his half of the property and good-will, including the right to use the old firm name of Burckhardt & Co. was not severed by the severance of the gross sum paid for both, for the mere purpose of .determining the amount of the internal revenue stamp to be fixed to the deed of the realty.
In other words, such severance, after the sale had been made, for revenue purposes merely, of the gross sum paid for the real estate and good-will into two sums, the one representing the estimated value of the real estate at $45,000 and the other the value of the good-will at $35,000, did not destroy ■the entirety of consideration as agreed by the parties to be paid for both.
2nd. In an action by the purchaser of the good-will, to recover damages for a breach of said contract, the measure of damages is not to be determined by the number of the old customers improperly solicited, irrespective of the effect of such solicitation on the business of the purchaser, but the damages should be measured by the injury sustained and not by ineffectual attempts to injure. It is only successful efforts to injure, and not unsuccessful, which renders the seller liable to damages.
3d. The measure of damages is the same whether relief be sought in an'independent action or by counterclaim.
*494 4th. Informalities in pleading such a counterclaim are not grounds for reversal of the judgment after issue and trial.
This case does not, as seems to be supposed, decide what is the proper measure of damages where the good will is impaired or destroyed. In general terms it is held : “ The damages should be measured by the injury sustainedbut what is the proper rule of measuring such injury 2 or what amount of proof is necessary 2 or what effectual solicitations proven, constitute a breach of the contract for which damages are recoverable 2 are questions not considered or decided in that case.
The main, and perhaps only question necessary to be considered now is, what is the rule for ascertaining the damages where it is proven that there has been a breach of the contract for the sale of the good-will, and therefore a legal injury, entitling the purchaser to some damages 2 That these damages should be measured by the injuries sustained, is conceded. The question here is, whether there has been a failure of proof of such damages, except in the four instances named. The counterclaim of Frederick alleges, as a breach of said contract, that Leopold, for the purpose of injuring Frederick, entered into the business of the old firm and held himself out as the successor thereof, and caused bill-heads, cards, circulars and brands to be made and printed in imitation of those of the original firm, which were calculated and intended to deceive the public, and the customers and consignors of the old firm, and to induce them to believe that he was carrying on and continuing the business of the old firm of Burckhardt & Co., and that he, by promise of reward and otherwise, enticed away employees of said firm, who were acquainted with its customers and trade, and held out and represented to its consignors and customers, that ho was entitled to do said business, and in every possible manner, attacked, injured and destroyed the goodwill of the business he had sold and conveyed to Frederick.
Upon issue joined on these charges, the court find, first, that Frederick purchased from Leopold the latter’s half of the real estate, &c., the good will, of the business theretofore carried on by the old firm, and not merely the good will *495 attaching to the premises upon which such business had been so carried on, and also the exclusive right thereafter to the use of the name of Burckhardt & Co. as his trade-mark.
2nd. The court found upon such issue joined, that Frederick had bought the whole property and good will for $83,000¿ $45,000 of which was the value of the real estate and fixtures and machinery, &c. and that $35,000 was the value of the good will and firm name as the trade-mark, “ as fixed by the parties in this transaction.”
It was further found “ That Leopold had failed to give him (Frederick), or has deprived him of the exclusive benefit, use and enjoyment of such good will and such firm name of Burckhardt & Co.”
The fact that the parties had thus fixed the value of the real estate, etc. at $45,000 and the good-will at $35,000, which was found to be for internal revenue purposes merely, ceases to be of significance since the decision above quoted in 36 Ohio St.
The finding that Leopold had failed to give him, or had deprived him of the exclusive benefit, use and enjoyment of the firm name, is equivalent to finding the issues joined in favor of Frederick. That is to say that Leopold was guilty of a breach of his contract in regard to the sale of the good-will.. This is a final judgment, and from which neither party appealed. It is the basis of the original order of reference to a master, for the purpose of determining the amount, if any, of daniages Frederick should recover.
The master was directed to determine such question from the testimony then before the court, “ and such other testimony as the parties may adduce before him upon the subject of the extent of the deprivation or damages sustained by Frederick by reason of the premises.”
The master was directed to determine such question upon such evidence, “ Not requiring the defendant to make proof as of a bill of particulars of" his injuries, but upon the testimony applied to the case in view of the nature of the subject; to which and to all the circumstances, he will give due'weight and consideration.”
*496 Thus it will be seen that the court found that Frederick bad sustained a legal injury, and referred the case to the master to ascertain the damages which Frederick had sustained by 'reason of-such injury. The master, in his final report upon this subject, found, as a matter of law, that the amount of such damage may be ascertained both by proof of specific loss of business and profits, or diminution of the value of the property sold, considering the same as an entirety, or the good will alone. He further found, that if the testimony, as to the difference in value of said property, or of the good will alone, before and after the commission of the acts and conduct of Leopold and his agents, of which they had been found guilty, be incompetent, or though competent be insufficient upon which to base a finding of the amount of damages sustained, and there being no proof of specific loss of business and profits, then Frederick can only recover nominal damages. He was, however, of the opinion that such ■ evidence was of great weight, though not sufficiently conclusive upon which to base a positive and definite finding of the exact amount of damage suffered by Frederick. Pie therefore submitted his report without coming to a conclusion as to the amount to .be allowed Frederick as his damages. This brought before the court the whole question as to the competency and sufficiency of evidence as well as the extent of the injury and the amount of damages. That question was whether there should be proof of the amount of specific loss of business and profits, before Frederick could recover more than nominal damages. The court found that while there had been sundry instances of improper solicitation, yet there was a failure of proof of damage caused thereby, except in the case of four customers named. As to these, damages were assessed at $100. The master had found, assuming the difference in value before and after the wrongful acts was not sufficiently conclusive, and that there was no proof of specific loss of business and profits, that therefore Frederick could only recover nominal damages. The court modified that finding in the case of the four customers named, and from the evidence found there was proof of specific loss of business and profits as *497 to them, and sustained the report as to nominal damages for all other wrongful acts proved. In this, we think the master and court erred. In the original order of reference, the master was directed not to require proof as in case of bill of particulars, but upon the testimony, in view of the nature of the subject, and all the circumstances which would enable him to determine the amount. In other words, the clear and distinct meaning of the third paragraph of the order of reference is, not to require proof of specific loss of business and profits as of a bill of particulars of his injuries, but to ascertain the amount of damages sustained by Frederick, by reason of the premises. This was disregarded. This direction to the master was apparently satisfactory to all the parties, and in our judgment was right and proper. It is manifestly at variance with the final action of the master in reporting in favor of nominal damages, and of the court below in holding that there was a failure of proof as to damages, because it was not specific as to loss of business and profits.
The final judgment, which was the basis of the original order of reference, found, and this we think is-a proper construction of the contract, that Frederick purchased, not merely the good will attached to the ¶remises sold, but the property and good will of the business, and the exclusive right to the use of the name of “ Burckhardt & Co.,” as a trade-mark.
The sixth finding of fact in the original report shows, that Leopold did not limit his efforts to legitimate methods for securing business from former customers, but that in making solicitations, Leopold, under the name first of “L. Burck-hardt & Co.” which he was compelled to relinquish, and then often under the name of “Leopold Burckhardt & Co.,” by lowering prices, underselling, giving longer time, sending samples and statements, offering special inducements and other ways, strove to take away the customers of the old house, in which he was successful, and caused a sharper competition in business than was ever known, and this was sharpest and bitterest between Leopold and Frederick.
For such acts and conduct by Leopold, as the master finds, and the evidence warrants such finding, all must admit, Fred *498 erick was entitled to substantial damages. These are to be measured by the extent of the injury. The finding of the court upon issue joined before reference, and the report of the master, which is supported by the evidence in the case, dearly establish two propositions : 1st. That the exclusive right of the name of Burckliardt and Company as a trade-mark was violated by Leopold. 2nd. That in violation of his contract, he has impaired, during the time he was in business, by various inducements, devices, and representations, the good will of the old business. These wrongful acts appear to have been intentionally done for the express purpose of depriving Frederick, of the advantages of his purchase, and of securing the good-will of the old house to himself. They entitle Frederick to damages, commensurate with the injury.
The question before us is as to the degree of proof necessary to be made, to entitle him to such damages. The degree of certainty which may be reasonable in some transactions, cannot, in the nature of things, be attained in this case. In some cases, as in an action on a note, damages are easy of proof, while in others, and the case at bar is one of them, the same degree of certainty is not attainable.
“ The most direct and legitimate injurious consequence, which can follow upon an unauthorized’ dissolution of partnership, is loss of'profits. Unless that can be made up to the injured party, it is idle to say that any obligation is imposed by a contract to continue a partnership for a fixed period. It is the same to say that such profits cannot be proved, except to a reasonable probability.” 1 Sutherland on Dam. 119.
“ The success of business ventures is not antecedently certain in an absolute sense; they are generally undertaken in reliance upon probabilities, based upon laws of demand and supply. Though speculative in their inception, by anticipating future values, they are restrospectively examined, generally, when they become subjects of investigation, and then such values are capable of proof. If the business (the profits from which are in question) is a trading business, they must depend on a succession of purchases of stock, of some sort,- for sale, or the employment of labor, or materials to be purchased *499 for its production, and a succession of sales to prospective customers. Where the injury complained of is an interruption or prevention of such a business, or in causing a diminution of it, it is scarcely possible to establish damages to a very high degree of certainly. In many cases the best conclusion will be a probable one. The rule of law is the same in all cases, that the damages must be proved with certainty; but a. greater degree of certainty being attainable, in some cases, than is possible where the result sought depends on the chance of future bargains, the law will not permit the proof which is certain to be neglected, and a resort to that which is less satisfactory ; though the latter, in other cases, is the best the nature of the case admits of, and must be received as the only guide to the proper amount of compensation, and would then be available.” 1 Sutherland on Dam. 118, 119.
In actions for breach of contract where the elements of fraud and intentional wrong exist, as well as in torts, the law does not require impossibilities, it only requires that degree of certainty of which the nature of the case admits. Under proper instructions juries are allowed to act upon probable and inferential, as well as direct and positive proof, and they may look to all the facts and circumstances of the case, so as to enable them to make the most intelligible and probable estimate of which the nature of the case will permit. While it is true that damages must be proved and not conjectiired, it is equally true, that the degree of certainty to be obtained in such proof is not always the same. Graham v. Plate, 40. California, 593, was an action for the infringement of a trademark. Actual profits was adopted as the rule of damages, although it was not ascertained how much of these profits was due to the trade-mark, and how much to the commodity sold. The case was likened to one of confusion of goods, and was placed upon the ground that one who fraudulently uses a trade-mark, cannot shield himself from damages to the extent of the profit he has made, although it is impossible to show how much is due to the trade-mark and how much to the commodity. "Where there is fraud or other intentional wrong, there is- not *500 the same strictness to exclude remote or uncertain damages, evén though punitive damages are not involved. We think the case at bar one of willful wrong, and that the language of Christancy, J., in Allison v. Chandler, 11 Mich. 552, is applicable. He says: The nature of the case is such as the wrong-doer has chosen to make it; and upon every consideration of justice, he is the party who should be made to sustain all the risk of loss which may arise from the uncertainty pertaining to the nature of the case and the difficulty of accurately estimating the results of his own wrongful act.”
“ The value of property constitutes the measure or an ele ment of damages in a great variety of cases, both of tort and of contract; and where there are no such aggravations as call for or justify exemplary damages, in actions in which such damages are recoverable, the value is ascertained and adopted as the measure of compensation for being deprived of property, the same in action of tort as in action upon contract.”
In Mellersh v. Keen, 28 Beavan, 453, it was held that when, on a dissolution, one partner obtains exclusively the benefit of the good-will, and is made acountable for it, the. court, in ascertaining its value, considers what it would have produced, if sold in the most advantageous manner, and at the proper period of time. And on page 454 we find so eminent a judge as Sir John Romilly thought it proper to arrive at the value of the good-will. He says : “ I think the chief clerk has come to a right conclusion. The difficulty of ascertaining the value of the good-will of a business is yery great ; it is of a shadowy character, and a very slight thing will increase or diminish its value. I have no doubt, that the evidence of the eight or nine bankers, who have said that it was worth nothing, may be perfectly true, in one sense, that nothing could have been more easy than to have sold it in such a way that nobody would have given a penny for it. But the court is bound to look at it in this point of view : what would it have produced if it had been sold in the most advantageous manner and under such circumstances that it would have produced the largest sum for -all parties interested ?”
See also Mitchel v. Reed, 84 N. Y. 556, where it was held, *501 that the opinion of witnesses as to the válue of the good-will as an element of damages was competent, Chief Justice Fol-ger said, “ The question put to witnesses to speak to the damages assumed that it was proper' to consider the furniture and good-will as put up .together with the leases, and the parties, or either of them, had a right to bid, and that what those three together would bring at such a sale was a basis for the computation of damages.”
Alluding to the objection, that the furniture and good-will were not proper constituents in' the inquiry, he said that: “As the matter stood when this suit was begun, the plaintiff’ was entitled to an interest in the leases renewed, in the furniture and whatever else was a thing of partnership value. It. is manifest that the property of a partnership engaged, in the. business of keeping a public house is more valuable if that property may be kept together at the place of business to-which the customers were used, with the right to carry on the. same business at that place by the same proprietors for a fixed-term, than if put up for sale with the need upon most bidders for it, including one of the partners, to take it elsewhere intoother business or into a hew place for the same business. ' The defendant had done damage to the plaintiff in bringing about the last named state of things, and one element of that damage^ was the diminution in value to the plaintiff of his interest in. the property thus affected.
“ So it was an element in the estimate .of damage, what the property would have brought had there gone with the sale of. it the right to keep it on at the same place in the same business. The law’s delay and the course of events.had precluded the plaintiff, from an enjoyment of the leases, and there was no practical departure from instructions by an agent, or a loss-through his' negligence or misconduct, or that of a bailee or trustee ; as well as where there is a tortious taking or conversion, by one standing in no contract relation to the owner.And, moreover, the value' is fixed in each instance, on similar considerations, at the timé when, by the defendant’s fault, the' loss culminates.”
- In .view of these citations with many others that might be *502 added, we conclude that the court below erred. It is apparent both from the record and .from the published opinion that the degree of certainty required, amounts to a practical denial of justice. The case is shown to be one where the conduct of Leopold is marked with the elements of unfair dealing. It is impossible to prove the injurious consequences of each particular act, and it is proper that Frederick should have substantial damages, to be determined by the results of the wrongful acts upon his business. AH the facts and circumstances tending to show the extent of the injury, which will enable the court or jury to adequately estimate damages should be considered. While the opinion of witnesses as to the amount of damages is incompetent, yet such an opinion coming from witnesses, as to the value of the property with and without good will and trade-mark, or the diminished value of the property with the good will destroyed or impaired, by reason of the wrongful acts of Leopold, is competent and may in the absence of more specific proof be taken as the measure of damages. C. & P. R. R. Co. v. Ball, 5 Ohio St. 568; Lawson on Opinion and Exp. Ev. 446. Since the act of April 1883, after which this case came to this court, we are not required to determine as to the weight of evidence, we cannot undertake to do so now, therefore it must be remanded for further proceedings as to the extent of the injury and for' the assessment of damages. There is an additional reason for this. The new firm was not engaged in competing for certain lines of business with the old, and therefore the deprivation and damages resulting from the wrongful acts of Leopold must be limited to such lines of business as he was engaged in, in common with the old firm.
2. Extended arguments have been made pro and con as to whether Leopold was in fact guilty of a breach of his obligations as fixed by the contract of the sale. In the view we have taken of this case this question is not before us, unless we review the evidence.
The court, before any reference, had found against Leopold on this question. The court below, in its final judgment upon the report, finds that there were sundry instances of improper solicitations, but what were their extent, nature and character, *503 or what particular acts were proper or improper is not stated. In the original order of reference it was, as we have said, found that the contract transferred to Frederick, the good-will of the business and not merely that of the premises, and also the exclusive right to the old firm name as a trade-mark; and that Leopold had by the acts charged, deprived him in whole or in. part, of what he had purchased.
Taking, as we must, that finding, as a basis of the assessment of damages, the final finding of sundry improper solicitations was uncalled for, or too indefinite to be reveiwed here. The case must be remanded, to a court competent to determine the extent of these wrongful acts and to assess the damages accordingly. We cannot now undertake to go through this evidence and specify each particular act, which was a violation of the contract. This must be determined in every case by the underlying principles of good faith and fair dealing.
Leopold had the right to engage in a similar business as that of the old firm. But this gave him.no right to resort to undue means, to take from Frederick the benefits of his purchase. By his sale he parted with the good-will of the business of the old firm, and cannot be permitted to derogate from his grant.
The special efforts which he made, as appears from the master’s report, to induce the customers of the old firm to believe that he was its successor, or to deceive them by an imitation of its trade-mark and the special inducements offered to old customers to decoy them to his place of business, and all other unfair means to which he and his agents resorted, are forbidden by the plainest principles of common honesty. As the case must be remanded for further proceedings, we have not thought it necessary to pass upon other questions raised.

Judgment reversed and cause remanded.