FRANK CHAMBERLAIN, Respondent, *v.* ROBERT DUNLOP, as
Executor, etc., Appellant.

*Supreme Court, Third Department, General Term, December 11, 1889.*

1. *Lease. Renewal notice.*—A notice of an election to extend a lease in
   pursuance of a provision therein is not impaired by embodying in such
   notice modifications which the lessee desires to be inserted in the new
   lease.
2. *Same.*—An acceptance of such notice by the lessor, with refusal to so
   modify the terms, extends the lease under the original terms.
3. *Same. Surrender.*—To make an implied surrender of an existing lease
   by the acceptance of a new one by the lessee, the latter must be valid
   in law to convey a perfect legal title to the tenant.
4. *Evidence. Expert.*—The opinion of an experienced miller is competent
   on value of a mill lease.
5. *Same.*—So, the opinion of an architect, who has had personal experience
   in removing *debris* of buildings destroyed by fire, as to the length of
   time to remove debris, is admissible.
6. *Interest.*—Interest on an unliquidated claim is not allowable.
7. *Appeal. Facts.*—Only where it can be seen by a receiver of all the
   evidence that the finding is erroneous, will a review on the facts be
   granted.

Appeal from judgment in favor of plaintiff, entered upon
the report of a referee.

The action was upon a lease for five years to begin Novem-
ber 1, 1876. The lease provided that in case of destruction
or damage by fire the lessor would with "all reasonable
promptness" rebuild or repair the premises. There was a
privilege to renew for two years longer. The property was
burned March 3, 1883. The new lease was dated February
15, 1883, was delivered before the fire but was not to go
into effect until May 1, 1883. Robert Dunlop, lessor, died
October 14, 1882. Defendant is his executor. The new

lease was executed by Matthew Wallace under a power of attorney. Robert Dunlop left a will but died intestate as to these premises. The power of attorney was executed by all the heirs except one minor, but was not executed by Dunlop's widow. The action was brought because the mill was not rebuilt after the fire.

*Amasa J. Parker*, for appellant.

*Isaac Lawson*, for respondent.

PUTNAM, J.—The contract of lease, executed between Robert Dunlop, deceased, and plaintiff, containing the covenant for the breach of which this action was brought, took effect on November 1, 1876, and continued for five years, or until November 1, 1881, with a right to plaintiff to have the lease extended for the period of two years longer upon the same terms and conditions, provided that plaintiff gave the lessor, at least three months before the expiration of the five years, written notice of his desire for such extension.

The letter written by plaintiff on July 23, 1881, was a written notice to the lessor that plaintiff elected to extend the lease for the two years. It was served in time, and in all regards seems to be a compliance with the conditions of the lease. The fact that plaintiff in such letter, after notifying the lessor of his election to extend the lease, also proposed a modification of its terms so that it should expire on May 1, 1884, instead of November 1, 1883, does not, in any way, impair the force of his previous notification of an election to extend the term to November 1, 1883.

The letter dated July 26, 1881, written by the lessor to plaintiff, was an assent to the extension of the lease, but a refusal to change its terms. After the notice it appears that plaintiff remained in possession of the leased premises and paid rent under the lease so extended.

The effect of this written notice clearly was to extend the

lease to November 1, 1883, with all its terms, conditions and covenants. Betts *v.* June, 51 · N. Y. 274 ; Long *v.* Stafford, 193 Id. 274.

The defendant claims, however, that this lease was surrendered by operation of law by the plaintiff's accepting, on March 3, 1883, a new lease executed by the heirs of Robert Dunlop, deceased.

It is held that a surrender by operation of law is implied by the acceptance of a new lease by the tenant during the term of the former one. A new lease did not begin till May 1, 1883. But the new lease must be valid at law to vest in the lessee the term which it professes to convey, and to carry out the intent of the parties. Taylor's Landlord and Tenant, §§ 512, 513 ; Schieffelin *v.* Carpenter, 15 Wend. 405–6.

It was shown by plaintiff that the new lease was agreed to be executed by all parties having an interest in the property, and that it was not executed by the widow of the deceased and by one of the heirs owning an undivided one-eighth interest in the property, so that the plaintiff, under it, would not obtain a good title to the leased premises according to the contract, and that he supposed when he received the lease that it covered the interests of all parties having an interest in the property. This evidence was not contradicted. We think that the conclusion of the referee, that the acceptance of the new lease did not, by operation of law, work a surrender of the old one, is correct. It is only a lease that conveys the title to the leased premises according to the intent of the parties that implies a surrender. Here it is shown that plaintiff, under the new lease, did not obtain the interest he thought he did ; that he did not obtain good title to the premises. One of the lessors, Susan Dunlop, appears on the face of the lease to have executed it, but did not, in fact, do so. Counsel for the appellant suggests that she stood by and approved it. She could not legally approve it because she was an infant. It is also suggested that she never disaffirmed the lease, but has since done all in her

power to ratify and affirm it. The difficulty with the defendant's position is that if it was a surrender of the old lease it was a surrender that took effect on March 3, 1883, when plaintiff received the new lease, and that Susan Dunlop did not become of age until September 8, 1883, and could not until that time legally ratify or affirm the new lease. Besides, by the terms of the new lease, it ceased and determined by the fire, March 3d. So that if plaintiff's acceptance of the new lease, delivered to him on March 3, 1883, under such representations and circumstances as amounts very nearly to a fraud on him, works a surrender of the old lease, such surrender must date from March 3, 1883, and Susan, at any time after that before she became of age, could have refused to ratify the lease. Thus, if the contention of the defendant is correct, plaintiff, by receiving a lease not conveying good title, or the title he was to have, would have surrendered a valid lease under which he could hold the property until November 1, 1883.

The new lease which he received was not one that any business man would have accepted of such a valuable leasehold interest if aware of the defects in its execution. Susan could, at any time after its acceptance, interfere with the occupancy of the tenant. It is true, had plaintiff continued to occupy the premises under the new lease undisturbed, he would have been compelled to pay the rent therein reserved. But no such state of facts exists in this case. Before the lease took effect the property was burned, and by its terms it ceased and became of no effect; and hence, also, it was not necessary for plaintiff to tender it back to the lessors, it having by its terms become void before it went into operation.

Hence, we conclude that the old lease counted on in the complaint remained in force until November 1, 1883.

It is not denied by appellant that an action can be maintained by plaintiff against the defendant as executor of Robert Dunlop, deceased, for damages for a breach of cove-

nants contained in the lease, if such action is otherwise maintainable.

The counsel for the appellant insists that the referee erred in finding that the mill and elevator could have been rebuilt before the expiration of the term of the lease, and, also, if it could be so rebuilt in finding that the value of the lease for the unexpired term was $2,000. That the evidence shows that to remove the *debris*, make contracts, do the mason and carpenter work, and put the machinery in so large a structure would have taken until after the time of the expiration of the lease. Also, that there is no sufficient or satisfactory proof that a lease for six weeks of such a tenement to be used for such a purpose, and when the lessee, in the six weeks, would be compelled to move in with all necessary material to work with, and also to move out is of any value whatever. There was evidence given before the referee on this question, some of which tends strongly to sustain the position of the defendant, and some tends to show that the building could have been completed by the middle of September, 1883, and that the value of the unexpired term of the lease was over $2,000. The matter was discussed before the learned referee, who heard the evidence, and, it appears from his opinion, carefully considered by him.

The claim of defendant has great force, and on carefully reading and considering the evidence given, it must be admitted that the case is a close one, and one where it was possible for the referee to have reached a different conclusion. But a reversal on the facts will be granted only where it can be seen by a review of all the evidence that the finding was erroneous. Wheeler *v.* Miller, 24 Hun, 545.

We will not undertake to discuss the evidence given on the trial. We have examined it with care, and have considered the briefs presented by the respective counsel, and we are not prepared to hold that the learned referee, who appears to have carefully considered the testimony taken before him, has reached an erroneous conclusion in his report.

It is claimed that the referee erred in overruling the objections to this question asked of plaintiff as a witness: " If the property had been rebuilt prior to the 1st of November, 1883, and restored to the condition it was in immediately preceding the fire, what, in your opinion, would have been the value per month of the unexpired term of the lease, over and above the rent reserved ? "

The objection was not made that the witness was not competent to give an opinion. He had just before this question was asked described the business done the year before the fire, stated the increase of the business, the monthly receipts and expenses and profits in detail, and stated all the facts and circumstances showing the nature of the business and how it was carried on, and was then asked the above question. We think the question was proper under the holding of the court of appeals in Mitchell *v.* Read, 84 N. Y. 556, 559. In that case the witness, to whom the amount of the net profits of the premises for several years past was stated in a hypothetical question, was allowed to state the value of the new lease. Had the witness, in that case, known and stated in his testimony the same facts that were described to him in the hypothetical question, he would have been fully as competent to state the value of the lease. See also, Taylor *v.* Bradley, 39 N. Y. 145, cited in 101 N. Y. 211, 212.

The case of Norman *v.* Wells, 17 Wend. 136, 163, cited by appellant, is not quite parallel to this. There the action was for damages for the breach of a covenant in a lease where the lessor had agreed not to let another mill site for a mill to saw mahogany. It was held that the opinion of witnesses as to the probable amount of damages resulting from a violation of the covenant was not permissible. See pages 161, 162, 163. In Ferguson *v.* Hubbell, 97 N. Y. 507, in an action for damages for defendant's setting fire to brush on his land, which injured plaintiff, it was held that the witnesses could not swear that in their opinion it was a proper time to burn

fallow.  It was held not a case for expert testimony; that the opinion of experts may not be received when the inquiry is as to a subject not requiring any peculiar habit of study to understand it.  It must relate to some trade, profession, etc.  To the same effect is the case of Wakeman *v.* Wheeler & Wilson Mfg. Co., 101 N. Y. 217.  But it was held in Mitchell *v.* Read, *supra*, 556, 558, that it was proper to ask an old and experienced hotel-keeper the value of a hotel lease. This doctrine was approved by EARL, J., in Wakeman *v.* Wheeler & Wilson Mfg. Co., *supra*, 218.  It follows that the opinion of an experienced miller may be asked as to the value of a mill lease.

It is claimed that the referee erred in overruling the objections to the question asked the witness Fleischmann as follows: " How long, in your opinion, would it have taken to remove the *debris* to permit the rebuilding to commence ? "

The witness was an architect and had sworn that he had a practical, personal experience in removing *debris* of buildings destroyed by fire; had himself had *debris* removed and had seen it removed by others.  We think that he was shown competent to answer the question.

Appellant also claims that the referee erred in sustaining the objections to defendant's offer in evidence of the book kept by the witness, Matthew J. Wallace, for his father, to show the amount expended from time to time, the number of men employed and the work at which they were employed on the building.  The case does not disclose that the book was competent evidence.  It does not appear that it was correctly kept, or that it was an original book.  At the best it was a written statement of defendant's deceased agent.  No preliminary proof appears in the case to render the evidence competent.

It is claimed that the referee erred in overruling the objections to the question asked the witness, Fleischmann, " Whether it would have been safe to run up the brick walls in six weeks."  Fleischmann was an architect and had

testified that he had experience in erecting a large number of buildings ; had been in the habit of observing the length of time required to procure materials and to do the work. We think that he was shown competent to answer the question.

The foregoing are all the exceptions taken by appellant to the reception or exclusion of evidence to which our attention is called by his points.

The appellant further claims that the referee erred in allowing interest on the damages. We are inclined to think that this objection is well taken. Plaintiff's claim was unliquidated, and hence, it was not proper to allow interest on the damages sustained. See Mansfield *v.* N. Y. C. R. R. Co., 40 Alb. L. J. 89, 90, and cases cited. McMaster *v.* New York, 108 N. Y. 557.

The judgment should be modified by striking out the interest included therein up to the date of the referee's report and as so modified affirmed, without costs.

LEARNED, P. J., and LANDON, J., concur.

---

NOTE ON " REVERSAL ON QUESTIONS OF FACT."

Where a case, on appeal to the general term, shows an exception to a finding of fact, and there is no statement that it contains all the evidence, the facts are not before the general term for review. Aldridge *v.* Aldridge, 120 N. Y. 614. The only questions in regard to such finding which it can review are those at law. Id.; Halpin *v.* P. Ins. Co., 118 N. Y. 165; Porter *v.* Smith, 107 Id. 531; Howland *v.* Howland, 20 Hun, 472; Spence *v.* Chambers, 39 Id. 193; Davis S. M. Co. *v.* Best, 50 Id. 76; Wellington *v.* C. C. & I. Co., 52 Id. 408; Murphy *v.* Board of Ed. 53 Id. 171. It is no answer that the point was not taken at general term. Aldridge *v.* Aldridge, *ante.* It is not necessary to raise it there. The exception to the finding and the absence of the certificate constitute notice to the respondent that the appellant intends to raise on the appeal to that court, only questions of law. Id. Where in such a case, some evidence appears to support the finding, the general term, upon reversing the judgment and granting a new trial, cannot certify in its order that the reversal was on questions both of law and fact.

Where the reversal of the judgment is on questions of law only, it is incumbent on the respondent, in order to sustain the order, to point out some ruling and exception taken on the trial which were erroneous; and where the findings of the trial court justify the judgment, the court of appeals cannot go outside of such findings, in search of other facts which, if they had been found would have required a different result; especially, where none of the facts upon which the general term proceeded were uncontroverted.   Cudahy *v*. Rhinehart, 44 N. Y. St. Rep. 898.   If the order of reversal had stated that the reversal was on the facts, it would then become the duty of the court of appeals to ascertain from the record whether there was any evidence to sustain the conclusion of the general term.   Id.

What is required, to justify a reversal upon the facts.   Matter of Brown, 59 Hun, 628.

The general term, on appeal from a judgment entered on the decision of the court on trial without a jury, has the power to reverse on the facts and order a new trial, though no exceptions to the findings of fact have been taken.   Roberts *v*. Tobias, 120 N. Y. 1.   But, in such case, it should appear in its order that the reversal was upon questions of fact as well as of law. Id.   In the absence of such a statement, the court of appeals is required to presume that the reversal was upon questions of law only.   Id.

An appellate court, which has the power to review the facts, is not, *it seems*, warranted in reversing upon the sole ground that, in its opinion, the trial court should have reached a different conclusion upon conflicting evidence.   Id.   To justify a reversal, it must appear that the findings are against the weight of evidence, or that the proofs so clearly predominate in favor of a contrary result that the trial court erred in its conclusion. Aldridge *v*. Aldridge, 120 N. Y. 614.

A reversal cannot be had on the sole ground that the appellate court might have arrived at a different conclusion, if issues had been submitted to it as trial judges in the first instance upon the evidence disclosed by the record.   Eckhardt *v*. Epstein, 58 Supr. 288.

The general term cannot interfere with the verdict of a jury on the ground that it is against the weight of evidence, unless the preponderance is both decided and apparent from an examination of the evidence.   Martin *v*. Platt, 61 Hun, 626.

See note in 1 Sil. (Ct. of App.), 495.