LUCIUS BEEBE *et al.*, Appellants, v. WILLIAM J. HATFIELD, Respondent.

St. Louis Court of Appeals, December 8, 1896.

1. **Replevin:** FRAUDULENT REPRESENTATIONS: INSTRUCTIONS. In an action of replevin for the recovery of goods sold and delivered to a corporation, on the ground of fraudulent representations by its officers as to its solvency at the time of the sale, it was error to withdraw, by peremptory instruction, the question of fraud from the jury, when there was evidence that the officers of the corporation made statements which admitted of the interpretation of a general representation of the solvency of the corporation at a date when, in fact, the corporation was insolvent.

2. **Good Will.** The good will of a corporation has a value, and may be the subject of sale, and a contention that, as it can have "no market value," it ought not to be accepted in payment of a stock obligation, is untenable.

3. **Sale, Avoidance of.** In order to avoid a sale it must be shown that the vendee must have intended not to pay for the goods at all.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*H. M. Pollard* for appellants.

Plaintiffs' fifth instruction has been repeatedly approved by this court. *Reed v. Lloyd*, 52 Mo. App. 278; *Herboth v. Gaal*, 47 *Id.* 255; *Cole Mfg. Co. v. Jenkins*, 47 *Id.* 664.

The question whether the representations made to the plaintiffs were fraudulent should have been submitted to the jury. As to representations of solvency, see *Ring v. Vogel*, 44 Mo. App. 111; *Saunders v. McClintock*, 46 *Id.* 216; *Kirkendal v. Harstock*, 58 *Id.* 234; *Elsas v. Harrington*, 28 *Id.* 300; *McDaniel v. Harvey*,

51 *Id.* 198–205; *Shickle v. Watts*, 94 Mo. 417; *Becraft v. Grist*, 52 Mo. App. 586.

All agreements of the corporation to pay more than the "reasonable market value" of the property for its stock, will be held naught when the rights of creditors intervene. *McDaniel v. Harvey*, 51 Mo. App. 198; *Foster v. Belcher, etc.*, 118 Mo. 238; *Garret v. Kansas City, etc.*, 113 *Id.* 330; 2 Morawetz on Corporations, par. 428.

The shoe company could not take anything for their capital, except "money, labor, or property, actually received." Constitution of Missouri, art. 12, sec. 8; R. S., secs. 2744, 2750, 2768, 2499.

*Campbell & Ryan* for respondent.

The "good will" of the companies was a valuable asset. *State ex rel. v. Wood*, 13 Mo. App. 139, 140; *Id.*, 84 Mo. 378; *Peltz v. Eichele*, 62 *Id.* 171–179; *Wedderburn v. Wedderburn*, 22 Beav. 104; *Binninger v. Clark*, 60 Barb. 113; *Rammelsberger v. Mitchell*, 22 Ohio St. 22; *Williams v. Wilson*, 4 Sand. Ch. 379; *Sheppard v. Boggs*, 9 Neb. 257; *Remick v. Ewing*, 42 Ill. 342–348; 14 Am. Law Reg. (N. S.) 334; 2 Woerner on Administration, 291, 292, sec. 127.

Mere insolvency of the buyer at the time of purchase does not give to the seller the right to rescind the sale. *Leedom v. Ward Furniture Co.*, 38 Mo. App. 425–432.

There must be a dishonest—actual, intention to cheat, in the mind of the vendee, at the time, or to do an act, the necessary result of which will be to defraud the seller. *Swift v. Rounds*, 43 Cent. Law Jour., note, p. 269. See, also, as to deceit: *Bullock v. Woolridge*, 42 Mo. App. 356, 362; *Saunders v. McClintock*, 46 Mo. App. 216, 225; *Swift v. Rounds*, 43 Cent. Law Jour. 266, 267, and note 269.

BIGGS, J.—This is an action for the claim and delivery of a lot of kid skins. The property was taken from the defendant under the writ of replevin and delivered to the plaintiffs. The plaintiffs are Boston merchants. On the tenth of April, 1895, they sold the goods in controversy to the Blasland–Parcels–Jordon Shoe Company, which will be hereinafter designated as the shoe company. It is a Missouri corporation, and at the time mentioned was manufacturing and selling shoes in the city of St. Louis. The purchase was divided into two shipments. The first was shipped at or about the time of the purchase, and the other about the tenth or twelfth of May following. The plaintiffs seek to reclaim the goods upon three grounds. *First.* It is alleged that the capital stock of the shoe company, which was nominally $116,000, was paid for in property not exceeding in value one half of that sum; that the officers of the shoe company fraudulently represented to the commercial agencies that the stock had been fully paid, and that the representation was communicated to the plaintiffs, and was partly relied on by them in making the sale and extending the credit. *Second.* That, at the time the sale was made and just prior to the shipment in May, the officers of the shoe company fraudulently represented to plaintiffs' saleman that the shoe company was solvent and was doing a good business, whereas it was insolvent; that those statements were also communicated to the plaintiffs, and that they were influenced by them in making the sale. *Third.* That the shoe company bought the goods with an intention not to pay for them.

The answer denied the plaintiffs' title to the goods, alleged ownership and right of possession in the defendant, and prayed a return of them.

The defendant claimed the goods as trustee under

a chattel mortgage executed by the shoe company on the twelfth day of June, 1895. The mortgage was given to secure certain creditors of the shoe company. It covered all the property of the corporation. The defendant took possession under the mortgage on the same day it was given. The trial resulted in a verdict and judgment for the defendant. The plaintiffs have appealed, and complain of the action of the court in admitting and excluding evidence, and also as to the instructions.

Concerning the alleged representations of the financial condition of the shoe company, the plaintiffs' salesman testified that in answer to an inquiry by him of the purchasing man of the shoe company as to its solvency, the latter replied, "that the house was all right." On May the ninth, and prior to the last shipment, the plaintiffs' salesman was again in St. Louis. At that time the shoe company was owing the plaintiffs about $2,000 on past due accounts. The business of the salesman was to look after the payment of these bills and to make further inquiries into the financial condition of the shoe company. He testified that after talking to Mr. Parcels, an officer of the shoe company, about the payment of the overdue accounts, which he promised to pay in a few days, the latter answered him that the business outlook of the shoe company was quite promising, and "that everything was all right, I could advise my house to that effect."

Touching the falsity of the foregoing representations the evidence tended to prove these facts: The chattel mortgage was given to secure debts for goods purchased amounting to about $40,000, and also borrowed money of about the same amount. The holders of the first mentioned indebtedness are eastern merchants and are stockholders in the shoe company. The money was borrowed from a local bank. The eastern

stockholders came to St. Louis a few days before the chattel mortgage was given for the purpose of looking into the affairs of the company, and after making a thorough investigation, they demanded security for their debts. In compliance with this demand the chattel mortgage was given, leaving unsecured debts amounting to between $70,000 and $80,000. In the afternoon of the same day on which the mortgage was given, one of the unsecured creditors threatened to sue by attachment, and thereupon the defendant took possession under the mortgage; and since that time has been selling the goods and collecting the accounts due the concern. He testified that at the date of the trial his collections were sufficient to pay the secured debts, that he had remaining stock worth $25,000, the machinery, and some uncollected accounts. He valued the machinery at $14,000. The plaintiff's evidence put the remaining stock at about $10,000 and the machinery at $3,000 or $4,000. But adopting defendant's valuations and taking into consideration the greatest possible amount that can be realized from the uncollected accounts, it is evident that he will be unable to pay the unsecured debts in full. It was also shown that there was no material change in the affairs of the shoe company between April 10, the date of the sale of the goods, and June 12, the date of the mortgage, and the evidence also was to the effect that there was a decided advance in the prices of shoes and leather between the two dates.

On this branch of the case the court gave the following instruction, of which the plaintiffs complain, to wit:

"The court instructs the jury that there is no evidence in this case for the consideration of the jury that plaintiffs sold the goods in question to the shoe company relying upon any fraudulent representations made by such company."

We take it that the meaning of the instruction is that the alleged statements of the officers of the shoe company concerning its financial condition were not sufficiently explicit to amount to representations of solvency. This was certainly the view of the trial judge, for the plaintiffs' evidence is explicit that the statements were communicated to them, and that the goods were sold on the faith of them, and the other evidence certainly had a tendency to prove that the shoe company was actually insolvent at the time the representations were made.

If the officers of the shoe company had given a detailed statement of its assets and liabilities showing its financial condition to be good, and this proved to be false in material respects, could there be any question of the plaintiffs' right to rescind the sale and recover the goods, provided they acted seasonably? Can it be then said that the court could withdraw by a peremptory instruction the question of fraud from the jury, when there was evidence in the case that the officers of the corporation made statements which admit of the interpretation of a general representation of the solvency of the corporation at a date when the corporation was in fact insolvent? Mr. Kerr in his work says that "if a statement be made by a man in such terms as would naturally lead the person to whom it was made to suppose the existence of a certain state of facts, and if such statement be so made designedly and fraudulently, it is as much a fraudulent representation as if the statement of an untrue fact were made in express terms." Kerr on Fraud and Mistake, p. 53. We therefore conclude that the instruction complained of ought not to have been given, and for this reason the judgment of the circuit court must be reversed.

In view of a retrial of the case we deem it expedient to refer briefly to other questions.

The evidence we think is insufficient to show any fraud in the organization of the shoe company. It was formed by the consolidation of the Parcels–Jordon Shoe Company, which had been doing business in St. Louis for three or four years, and the Blasland Shoe Company, which had also been manufacturing and selling shoes for about one year in St. Louis. The stockholders of the former company subscribed for $66,000 of the capital stock of the new company, and the stockholders of the Blasland company subscribed for the remainder, to wit, $50,000. In part payment of the stock the good will of the Parcels–Jordon Shoe Company was taken at a valuation of $13,000, and that of the Blasland Company at $10,000. The positive proof is all to the effect that "the good will" of the two companies was reasonably worth the sums named. It is conceded that "good will" has a value, and may be the subject of sale, but counsel for plaintiffs contend that as it can have no *market value* it ought not to be accepted in payment of such an obligation. This position we deem to be untenable. The decisions are that the capital stock of a corporation may be paid for in property at reasonable valuations. Suppose the stockholders of the consolidated company had paid for their stock in money, wherein would it have been illegal for its officers to have purchased the good will of the two outgoing concerns? We think this is a sufficient answer to the argument.

Again, the consolidated company accepted in part payment of its capital stock a note of one Peterson for $15,000 and a note of Blasland for $5,000. These notes were held by one of the old companies. Only $1,500 were paid on the larger note and nothing on the other. At the times the notes were received

the one for $15,000 was fully secured by collaterals which afterward became worthless, and the maker of the other subsequently became insolvent. At the time they were taken both notes were supposed to be good. We think it clear that the plaintiffs have no just grounds of complaint on account of either transaction.

The other question; that is, whether the shoe company bought the goods with an intention not to pay for them, was submitted to the jury under proper instructions. The vice (among others) in the plaintiffs' instructions was that the jury was directed to find for plaintiffs if the shoe company bought the goods with no intention of paying for them *"at the time or times when payment therefor became due."* The law is that in order to avoid the sale the vendee must have intended not to pay for the goods *at all*. *Bidault v. Wales*, 19 Mo. 36; s. c., 20 Mo. 550; *Fox v. Webster*, 46 Mo. 181; *Thomas v. Freligh*, 9 Mo. App. 151; *Manheimer v. Harrington*, 20 Mo. App. 297; *Herboth v. Gaal*, 47 Mo. App. 255; *Blackwell v. Fry*, 49 Mo. App. 638.

The judgment of the circuit court will be reversed and the cause remanded. All the judges concur.