The White Corbin and Company, Respondent, *v.* William Martin Jones, Appellant.

Corporation — Overvaluation of Property Transferred for Stock — Prejudicial Evidence. In an action to charge a stockholder for debts of the corporation on the ground that the capital stock was not in fact paid up because the nominal payment thereof was made in property intentionally overvalued, it is prejudicial error after a witness has testified that the property was overvalued and that he gave some shares of his stock to induce another person to invest in the stock at par, to permit him, over the defendant's objection, to explain that he did this because the purchaser insisted that the stock was watered and wanted his share of the "water."

*White Corbin & Co.* v. *Jones,* 86 Hun, 57, reversed.

(Argued March 14, 1898; decided April 19, 1898.)

Appeal from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered April 17, 1895, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. Martin Jones,* appellant, in person. Only upon the theory of the perpetration of a fraud by the incorporators of the company can the plaintiff recover from the defendant in this action. (*L. S. I. Co.* v. *Drexel,* 90 N. Y. 87; *N. T. W. Co.* v. *Gilfillan,* 46 Hun, 248; *Douglass* v. *Ireland,* 73 N. Y. 100; *Thurston* v. *Duffy,* 38 Hun, 327; *Blake* v. *Griswold,* 103 N. Y. 429; *Brockway* v. *Ireland,* 61 How. Pr. 372; *Draper* v. *Beadle,* 16 Wkly. Dig. 475; *Gamble* v. *Q. C. W. Co.,* 123 N. Y. 105; *Boynton* v. *Andrews,* 63 N. Y. 93; *Schenck* v. *Andrews,* 57 N. Y. 133.) The court erred in overruling the objection of the defendant to the question put to the witness Pitt as to his present opinion of the value of the assets to the Willard, Pitt & Moore business which were turned over to the corporation. (*Douglass* v. *Ireland,* 73 N. Y. 100; *Bonnell* v. *Griswold,* 80 N. Y. 128; *Barnes* v. *Wheaton,* 80 Hun, 8; *Chase* v. *Lord,* 77 N. Y. 1; *Schenck* v. *Andrews,* 57 N. Y. 133.) The court erred in admitting in evidence, against defendant's objection, the answer to the question, "I wish you would state how it came that Hussey received twenty shares of that stock, when, as you say, you owned the property for which it was issued," and also in permitting the question to the witness Goble as to the purchase price of the Capwell plant. (*Schenck* v. *Andrews,* 57 N. Y. 150; *Libby* v. *Tobey,* 82 Me. 397; *Thayer* v. *E. P. M. Co.,* 40 Ill. App. 344; *M. C. Works* v. *B. G. Co.,* 34 Ill. App. 404; *Toner* v. *Fulkerson,* 125 Ind. 224; *Young* v. *E. I. Co.,* 8 West. Rep. 153; *N. H. H. S. N. Co.* v. *L. S. Co.,* 2 N. E. Rep. 580.) Upon making and recording the certificate provided for in section 10 of chapter 40 of the Laws of 1848, the liability of a stockholder for the debts of the corporation ceases, except for actual fraud. (*Van Vleet* v. *Jones,* 75 Hun, 340; *Corning* v. *McCullough,* 1 N. Y. 53; *Eaton* v. *Aspinwall,* 19 N. Y. 119; *Aspinwall* v. *Sacchi,* 57 N. Y. 331; *Chase* v. *Lord,* 77 N. Y. 1; *Van Dyck* v. *McQuade,* 86

N. Y. 38; *Gamble* v. *Q. C. W. Co.*, 123 N. Y. 93.) The verdict in this action should be set aside by the court as contrary to the weight of evidence. (Code Civ. Pro. § 999; *Furguson* v. *Gill*, 74 Hun, 566; *Bliss* v. *Fosdick*, 76 Hun, 508; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 278; *H. F. Ins. Co.* v. *Tomlinson*, 58 N. Y. 215.)

*David Hays* for respondent. The trustees issued stock for the property to an amount which they knew was grossly in excess of its value, for the purpose of evading the statute. (*Nat. Bank* v. *Dillingham*, 147 N. Y. 603; *Cochran* v. *Wiechers*, 119 N. Y. 399; L. 1848, ch. 40, § 10; L. 1853, ch. 333, § 14; *Boynton* v. *Hatch*, 47 N. Y. 225; *Douglass* v. *Ireland*, 73 N. Y. 100; *L. S. I. Co.* v. *Drexel*, 90 N. Y. 87.) The claim of the appellant, that he did not participate in the fraud of the trustees, cannot avail him on this appeal. (*Hawver* v. *Bell*, 141 N. Y. 140; *Boynton* v. *Hatch*, 47 N. Y. 225, 232; *Salisbury* v. *Howe*, 87 N. Y. 128; *Lewis* v. *N. Y., L. E. & W. R. R. Co.*, 123 N. Y. 496; *N. T. W. Co.* v. *Gilfillan*, 124 N. Y. 302; *L. S. I. Co.* v. *Drexel*, 90 N. Y. 87; *McDowall* v. *Sheehan*, 129 N. Y. 200; *Seymour* v. *McKinstry*, 106 N. Y. 230; *Hardman* v. *Sage*, 124 N. Y. 25; *Johnson* v. *Underhill*, 52 N. Y. 203.) The appellant's contention that his liability as a stockholder was terminated by the recording of the certificate reciting that the stock was fully paid, is untenable. (*Veeder* v. *Mudgett*, 95 N. Y. 295.) None of the exceptions on the trial were well taken. (*Hazman* v. *H. L. & I. Co.*, 50 N. Y. 53; *Hamilton* v. *T. A. R. R. Co.*, 53 N. Y. 25; *Meltzer* v. *Doll*, 91 N. Y. 365, 369; *Boynton* v. *Hatch*, 47 N. Y. 225; *Douglass* v. *Ireland*, 73 N. Y. 100; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 355; Wait on Fraud. Conv. 276.)

Parker, Ch. J. As the record comes to us it appears that the trustees of the Rochester Lithographing & Printing Company, at the time of its incorporation under the "Manufacturing Corporations Act," intentionally overvalued the property

which was transferred to it in payment of a portion of its stock. About a year later this defendant was persuaded by one of the original promoters of the corporation to purchase some of its shares. Finding subsequently that stock, amounting to $12,700, still remained in the treasury of the company, this defendant and four associates took it up, paying par therefor, and immediately filed and recorded a certificate to the effect that the capital stock of the company had been fully paid up. Thereafter, The R. L. & P. Company became indebted to the plaintiff in this action, which indebtedness it neglected to discharge when the account matured, and it subsequently became insolvent.

This action is brought to charge the defendant with liability for the amount due from The R. L. & P. Company, on the ground that as a stockholder of such company he is liable to creditors to the extent of the face value of the stock held by him, because the capital stock of the company was not in fact paid up, in that a portion of the stock was issued in payment for property at an overvaluation.

Judgment having gone against the defendant, he insists, upon this appeal, that an innocent purchaser of stock of a corporation organized under the "Manufacturing Corporations Act," is not made liable for the debts of a corporation incurred after the filing of a certificate that the stock has been fully paid up, by proof that property at an overvaluation was accepted in payment for the stock of the company by the trustees, with full knowledge that such was the fact, where it also appears that the stockholder purchased without knowledge of the fraud, and also without such information as to the facts as should have put him on inquiry. The appellant is, however, mistaken in his assumption that this question is before the court. It was not raised in the court below. Neither on a motion to dismiss the complaint made when plaintiff rested, nor at the end of the whole trial, was the question presented. Nor were there any requests to charge which would suggest to the mind of the court that the defendant claimed protection as a good-faith purchaser of stock, as against a creditor

of the corporation, who became such after the filing of the certificate declaring that the stock of the company had been fully paid. Had any or all of these things been done, there would have remained the further difficulty that the defendant omitted to show, by his own testimony, or otherwise, that when he purchased the stock he was in fact ignorant of the alleged overvaluation of the property for which the trustees issued the stock. The question is not, therefore, before us and cannot be considered.

Exceptions were, however, taken to the admission of evidence against the objection of the defendant, which, we think, call for a reversal of the judgment. Upon the question of overvaluation there was a sharp conflict of testimony. John W. Pitt, who seems to have originated the idea of consolidating the lithographic business of Willard, Pitt & Moore with the printing business of Goble & Vredenburg, was very emphatic in his testimony that there was not only an overvaluation of the property, but the trustees knew of it. Goble & Vredenburg each testified that the presses, machinery and type, together with the good will of their business, were equal in value to the amount of the stock received by them, and that they supposed that such was the case with the property and good will of the business of Willard, Pitt & Moore, and, as we have observed, the strain of the case as it was presented to the court was whether this property was in fact deliberately overvalued by the trustees.

The witness Pitt, after testifying that he had received 110 shares in excess of the valuation of the property, and had given twenty of the shares to a man by the name of Hussey, whom he had persuaded to buy $5,500 worth of stock at par, was asked: " Q. I wish you would state how it came that Hussey received 20 shares of that stock, when as you say, you owned the property for which it was issued ? " To this the defendant objected as immaterial and incompetent. Whereupon plaintiff's counsel stated that he proposed to show the conversation between Hussey and Pitt. The objection was then overruled and defendant excepted.

The witness answered in substance that he had invited Hussey to look the plant over with the idea of investing some money ; that he had conceded to Hussey 20 shares of his stock in order to get him to invest, and that he had a conversation with him on the subject.    Defendant renewed his objection to any conversation between the parties.    The objection was overruled and defendant again excepted.

It will be observed that the fact that the witness had given Hussey 20 shares of the stock which he had received, was testified to without objection ; but as against the mischief which might be the result of the conversation between Pitt and Hussey, the defendant used every effort to protect himself.    And as the result shows, wisely.

The witness was allowed to give the conversation, however, and it will quite readily appear from a perusal of it that it could not have been otherwise than injurious to the defendant.

To the question, "What was said, or the substance of it, according to your best recollection," the witness answered, "Mr. Hussey insisted that there was water in the statement that we had made to him, and wanted his share of it if he invested any money, wanted his share of the watered stock, and in order to get him to invest any money, I divided the water I had, which was supposed to be the same amount which was conceded to Goble & Vredenburg."

It is difficult to imagine a more harmful answer than the one given, in view of the issue, which was whether there was intentional overvaluation.    The word "water" used in connection with the issue of stock, has a well-understood meaning, and as here used it conveyed necessarily to the minds of the jury that Pitt and Hussey had conducted their negotiations upon a basis which assumed the fact to be that 110 shares had been issued to Pitt, for which the corporation received nothing whatever ; that preliminarily Hussey asserted such to be the fact and Pitt admitted it, whereupon negotiations proceeded upon that basis to a successful result from the standpoint of Pitt.    This evidence was of course unanswered, for Hussey was not present at the trial, and it is quite likely that

the thing testified to was considered by the jury as an uncon-
tradicted fact of importance, for it was received by the court
after several ineffectual efforts of defendant to exclude it.    It
is sufficient, however, to call for a reversal of the judgment
that the court cannot say that this incompetent evidence did
not affect the result.

The judgment should be reversed and a new trial granted,
with costs to abide the event.

All concur.

Judgment reversed, etc.