## WHITE, CORBIN & CO. v. JONES.

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1903.)

1. CORPORATIONS—FORMATION—OVERVALUATION OF PROPERTY—STOCKHOLDERS' LIABILITY—GOOD WILL.
   Where a corporation was formed by consolidating two partnerships, and the good will of the firms was transferred to the corporation, such good will was an asset of the corporation, and should be considered in determining whether or not the property of the firms which had been transferred to the corporation in payment for stock had been overvalued, so as to render the stockholders liable for corporate debts.

2. SAME—EVIDENCE AS TO VALUE.
   In an action by a creditor to enforce a stockholder's statutory liability for corporate indebtedness for an alleged overvaluation of property taken in payment for stock, where the corporation was formed by consolidating two partnerships, a member of one of the firms, who testified that the good will of both firms was transferred to the corporation, and that the corporation did business with the customers of such firms, was competent to testify as to the value of such good will.

3. SAME.
   Where a corporation was formed by merging the business of two partnerships, and the assets of the firms were paid for with stock of the corporation, evidence of the extent of the merchandise sales of one of the firms from its formation until merged was admissible as bearing on the value of the property transferred and the worth of the good will of the firm's business, in an action to enforce a statutory liability against stockholders on the ground that the assets transferred were overvalued.

Action by White, Corbin & Co. against William Martin Jones to enforce defendant's statutory liability as a stockholder in the Rochester Lithographic & Printing Company. Verdict for plaintiff, and a motion for a new trial on exceptions was ordered to be heard in the appellate division in the first instance. Granted.

See 34 N. Y. Supp. 203; 61 N. Y. Supp. 21.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-LIAMS, and HISCOCK, JJ.

James Breck Perkins, for plaintiff.
William Martin Jones, in pro. per.

SPRING, J. The defendant was a stockholder of the corporation known as the Rochester Lithographing & Printing Company. This company was formed May 10, 1887, and it was the result of the combination of two copartnerships,—Williard, Pitts & Moore and Geobel & Vredenburgh,—each of which had been engaged in business in the city of Rochester for some time. The chief part of the $50,000 capital stock of the corporation consisted of the properties of those two companies. The defendant purchased stock in the corporation in February, 1888, to the amount of $6,000, and later, when the corporation was on the verge of collapse, increased this original purchase to the amount of nearly $18,000, and became the president of the company. The plaintiff obtained a judgment against the corporation in November, 1890, but was unable to enforce the collection of the same by execution, as the corporation was then insolvent. This action was commenced, charging that the property which made up the assets of the corporation had been knowingly overvalued, and that the capital stock had not been fully paid up, as required by section 10, c. 40, Laws 1848, known as the "Manufacturers' Act," and in pursuance of which the corporation was organized; and that by reason of this failure the defendant was individually liable for the debt of the plaintiff. The defendant was not a stockholder at the creation of the company, and was not, therefore, a party to the original overvaluation of the property going into the corporation, if such overestimate in fact was made. When the defendant became a stockholder in the corporation, no certificate to the effect that its capital stock had been fully paid in had been filed in the office of the county clerk of Monroe county, but on the 27th of April, 1889, such certificate was verified by the defendant, as president of the company, with other directors and trustees thereof, and was filed on the 29th of that month. In December, 1889, the sum of $6,500 was subscribed by the incorporators, and paid into the treasury of the company. The case has been three times tried, resulting each time in a verdict for the plaintiff; but the two previous judgments were reversed by the court of appeals. Upon the first appeal in that court the merits of the vital questions involved were not considered. 158 N. Y. 475, 50 N. E. 289. Upon the second trial the defendant requested the court to charge the jury that, even if there had been an overvaluation of the property transferred to the corporation, if in fact such over-valuation did not exceed the $6,500 subsequently paid into its treas-

ury, the original vice was cured by such payment, which the court declined to charge. A new trial on the second appeal was granted on the sole ground of this refusal to charge. The court of appeals, however, in its opinion (60 N. E. 422), and evidently for the guidance of the trial court and this court in the future consideration of the case, laid down the law applicable to its general features. The real defense of the defendant had been that, as he was not a party to the original overestimate of the property, he was not liable; that his first purchase of stock was nine months after the organization of the company, and without any knowledge of the omission of the trustees to estimate fairly its value; and consequently he was innocent of any wrongdoing. The court held that the individual liability of the defendant continued until the stock was fully paid in, and the certificate attesting that fact was filed; and, further, that the defendant so contracted when he became a stockholder. Again, on this question it is important to bear in mind that the defendant did in fact join in the certificate to meet the requirements of the statute, and it was then his duty to become apprised of the real state of facts as to the value of the property which originally comprised its substantial assets. Upon the last trial the court in an admirable charge followed the law of the case as established by the court of appeals. The charge was certainly as favorable to the defendant as the decision of the court of appeals warranted. The jury were instructed that no liability arose unless the original trustees intentionally overrated the value of the property transferred to the corporation, and "for the purpose of evading the statute"; and also that no recovery could be had unless such overvaluation exceeded the $6,500 paid into the treasury. On the pivotal point as to whether there was any overvaluation of the property by these trustees, there was an abundance of evidence to sustain the plaintiff's contention, making it a question of fact, and we would not be inclined to disturb the determination of the jury, except for certain errors which seem to us to require a new trial of this case, which, however, has made little headway in its 10 years of pendency.

Among the assets which it is proved was transferred to the company was the good will of the two copartnerships of Geobel & Vredenburgh and Williard, Pitts & Moore, whose property became vested in the corporation. Upon the trial the defendant offered to prove by Mr. Vredenburgh the value of this good will. No objection was made to the competency or qualification of this witness, and in fact no specific objection at all was made to the reception of the evidence. He had already testified to his connection and familiarity with the business of his firm down to the time when it was absorbed by the corporation, and had given his estimate of the value of the tangible property transferred, and had testified that this did not include the good will of the business. He was a stockholder of the corporation, and testified that the customers of his firm, as well as of the firm of Williard, Pitts & Moore, continued along with the corporation, so that it derived the benefit of the business which had been developed by the preceding concerns. The business was carried on in the same building, and under largely the same active

management, which had controlled the two firms. The good will of each firm was not, therefore, extinguished by the dissolution of the copartnership, but was a graft on the corporate business. Good will is often a valuable adjunct of a firm or corporation where the company has long continued its business, has a reputation for fair dealing, and has, by its conduct, attracted customers to it. That favorable impression and disposition made up a component part of its property value, and this element known as good will is held by the courts to be an asset in estimating the value of the property. Bininger v. Clark, 60 Barb. 113; Mitchell v. Read, 84 N. Y. 556, 564; Brett v. Ebel, 29 App. Div. 256, 51 N. Y. Supp. 573; Boon v. Moss, 70 N. Y. 465. While this is an intangible asset, it is still susceptible of being measured at a money value. Llewellyn v. Rutherford, L. R. 10 C. P. 456; Mellersh v. Keen, 28 Beav. 453; Beebe v. Hatfield, 67 Mo. App. 609; Burckhardt v. Burckhardt, 42 Ohio St. 474, 51 Am. Rep. 842; Mitchell v. Read, 84 N. Y. 556, supra. It may pass along with one partner, who continues the business in the same plant upon the dissolution of the copartnership. The trade or patronage is thus already acquired; and the importance of this ingredient is often recognized in commercial business by continuing the firm name, although the original copartners may have left the firm, or died, or in some other way that recognition is manifest. A valuable business may be the result of years of painstaking industry and probity, and it has always been deemed an important factor in the trade to retain the customers who, by their continued patronage, have indicated a satisfaction with the manner in which the particular business is carried on. The trustees of this corporation were authorized, as part of the capital stock, to "purchase mines, manufactories, and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be declared and taken to be full stock and not liable to any further calls; neither shall the holders thereof be liable for any further payments under the provisions of the tenth section of the said act, but in all statements and reports of the company, to be published, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the fact." Laws 1853, c. 333, § 2. Part of the value inherent in that capital stock was the good will of the business. That must, therefore, be taken into the account, and estimated as property, in the same manner as the machinery and tangible property were appraised. The trial court recognized that this was a component part of the assets transferred by instructing the jury that they might take it into consideration.

The question for us to pass upon is whether it was competent for a witness thoroughly conversant with the business and with its management in all its details to give his opinion of the value of the good will of the concern founded on his knowledge. In some way, concededly, this element of value may be ascertained. To prove the facts, and leave it for the jury to assess that valuation, might prove very unsatisfactory. They might not be at all familiar with the business, or competent to fix any estimate upon an asset which, in a given case, might be

very valuable, and in another worthless. The judgment of a man as to its value, not based upon a supposititious state of facts, but upon actual daily contact with the business, ought to afford some aid to the jury. If a qualified witness may give his opinion as to the value of a farm, of a manufacturing plant, of a stock of goods, or of any tangible property, however large or complicated, he also ought to be permitted to enlighten the jury, after stating the facts, upon the value of the good will of the business. If it has a money value, there must be some feasible, effective method of arriving at it, and getting it before a court or jury within their comprehension; and one of the aids· in accomplishing this purpose should be the judgment of a man who has grown up in the business, and assisted in imparting to it the good will which he is asked to estimate, and which he says he is able to do. As bearing upon this somewhat difficult question, are Mitchell v. Read, 84 N. Y. 556; In re Randell's Estate (Sur.) 8 N. Y. Supp. 652; Stove Co. v. Howe (Sup.) 36 N. Y. Supp. 701; and other cases cited above. In the Mitchell Case, referred to, competent witnesses were permitted to give their opinion of the value of the good will of renewal leases of the Hoffman House, in the city of New York. The proof in that case went beyond the rule required here. The witnesses were experts. In the present case Vredenburgh was one of the partners, and clearly familiar with the business. The testimony of a physician who has attended a man through a long illness is of a far higher grade in defining the specific character of the disease than that of a physician equally skilled who founds his opinion upon an assumed state of facts supported by his general professional knowledge of the subject. We are aware that in Kirkman v. Kirkman, 26 App. Div. 395, 49 N. Y. Supp. 683, there are observations at variance with the rules we are upholding. In that case, however, the witness was not engaged in the especial business, but his opinion was sought, based upon a hypothetical statement, which may distinguish the evidence from that offered in the present case. We think the court was in error in excluding this testimony.

During the trial it was sought in various ways to show the extent of the merchandise sales of Williard, Pitts & Moore from the formation of that firm, in October, 1885, until it became merged in the corporation, in May, 1887. This evidence was excluded, and, we think, erroneously. The evidence bore somewhat upon the value of the property itself, and certainly the extent of the sales may have affected materially the worth of the good will of the business. A like error is manifest where the defendant was excluded from showing the profits of the business of Geobel & Vredenburgh. It is to be understood at all times that the overvaluation of the property of the company is the pith of the controversy, and whatever tends to give light upon 'that subject within reasonable limits, either in enhancement or diminution of its value, is pertinent on that issue. It is to be remarked that the record in this case is running over with countless exceptions taken by the defendant, most of which are trivial and unimportant, and require no discussion by us. The defendant's motion for a new trial on exceptions should be sustained, and a new trial granted, with costs to the defendant to abide the event.

Defendant's motion for a new trial granted, with costs to the defendant to abide the event. All concur.